COMMONWEALTH *vs.* WILLIAM D. WOOD, JR.

Middlesex.    February 8, 1983. — June 22, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Jury and Jurors.  Constitutional Law,* Jury, Search and seizure.  *Search and Seizure,* Scope of search, Warrant.  *Practice, Criminal,* Challenge of jurors.

Police officers executing a concededly valid search warrant did not exceed the permissible scope of the authorized search by seizing from an apartment quantities of certain drugs and related evidence not named in the warrant, but found in the course of the search for articles named in the warrant.  [555-558]

Classification of prospective jurors on the basis of their age does not establish any discrete or defined group to which can be applied the rule of *Commonwealth* v. *Soares,* 377 Mass. 461 (1979), proscribing, in a criminal trial, "the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community."  [558-564]

Where the judge at a criminal trial erred by disallowing peremptory challenges which the defendant was entitled to exercise with respect to two prospective jurors, this error required reversal of the defendant's convictions without a showing of actual prejudice to him.  [558-564]

INDICTMENTS found and returned in the Superior Court Department on January 13, 1981.

A motion to suppress evidence was heard by *William H. Sullivan,* J., a District Court judge sitting under statutory authority, and the cases were tried before *John P. Sullivan,* J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Robert I. Warner* for the defendant.

*Patricia A. McEvoy,* Legal Assistant to the District Attorney, for the Commonwealth.

LIACOS, J.  On January 13, 1981, a grand jury returned four indictments, containing twelve counts, for possession

of controlled substances of classes B, C, D, and E, with intent to distribute in violation of G. L. c. 94C, against the defendant, William D. Wood, Jr. A fifth indictment charged illegal possession of hypodermic needles and syringes, adapted for the administration of controlled substances by injection. After a four-day trial in the Superior Court in Middlesex County, the defendant was found guilty of possession with intent to distribute phencyclidine, diazepam, lysergic acid diethylamide, barbituric acid, amphetamines, and marihuana. Wood was also convicted of the lesser included offenses of illegal possession of codeine, chlorpromazine, thioridazine, Renese R, phenobarbital, and cocaine.[1] He was convicted also of illegal possession of hypodermic needles and hypodermic syringes. The defendant was sentenced on the conviction of possession with the intent to distribute phencyclidine to ten years in the Massachusetts Correctional Institution at Concord (MCI Concord), from and after the expiration of a sentence then being served in Federal custody. On the convictions of possession with intent to distribute barbituric acid and amphetamines, Wood was sentenced to concurrent ten-year terms in MCI Concord, to take effect from and after his sentence for possession of phencyclidine with intent to distribute. All other charges were placed on file.

Prior to trial, the defendant filed a motion to suppress evidence, alleging that the evidence was illegally seized under a warrant lacking probable cause and by a search which exceeded the scope of the warrant. A judge of a District Court, sitting in the Superior Court by designation, denied the motion after a hearing.[2] After the trial, the defendant filed an appeal in the Appeals Court. We transferred the appeal here on our own motion.

---

[1] Originally, the defendant had been charged with possession of cocaine with intent to distribute. On a motion for a required finding of not guilty, this count was reduced to possession of cocaine in violation of G. L. c. 94C.

[2] The judge who ruled on the motion to suppress was not the trial judge.

The defendant contends that the motion judge erred in denying the motion to suppress.[3]  Furthermore, the defendant alleges a violation of his right to a fair trial and his right to be tried by an impartial jury by the trial judge's disallowance of several of the defendant's peremptory challenges. The defendant claims that the trial judge erroneously applied the *Soares* rule to peremptory challenges by the defendant, perceived by the trial judge to be based on age. See *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979). We conclude that the motion judge correctly denied the motion to suppress evidence, but that the trial judge erred in disallowing the peremptory challenges of the defendant, and we reverse.

We turn first to the suppression issue.  On July 28, 1980, the defendant went to the apartment of Kathy Lund and Michael DesRoche in Lowell.  DesRoche had known Wood for some time.  Wood was admitted by Lund, who also knew Wood.  DesRoche was not present.  Wood claimed that DesRoche owed him money.  He then proceeded to gather up personal property belonging to either, or both, Lund and DesRoche as security for the debt. Wood stated to Lund that the property would be at his apartment and could be recovered when he had been paid.

The property taken by Wood consisted of two sets of stereo speakers, a stereo, and an "eight-track" stereo. Apparently, unknown to Wood, at least at this point in time, one of the speakers contained nine packages of cigarettes and a prescription bottle containing Dilantin capsules, each with one-half gram of phenobarbital.  DesRoche suffers from epilepsy and uses the medication to control his seizures.  After DesRoche returned to the apartment, he learned of Wood's actions and called the Lowell police department in the early evening.

---

[3] The defendant does not argue before us the question of the adequacy of probable cause to issue the search warrant, and, hence, that issue is waived.  Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

Inspector John P. Guilfoyle interviewed Lund and Des-
Roche in their apartment for ten to fifteen minutes. After
getting a description of the property taken from their apart-
ment and the location where supposedly the property was
taken, Inspector Guilfoyle next obtained a search warrant
from an assistant clerk of the Lowell Division of the District
Court Department.

The warrant was based on an affidavit by Inspector Guil-
foyle. It authorized a search of the defendant's entire
apartment, as well as of four storage bins in the attic. The
search warrant described, with particularity, the stereo
speakers, the stereos, the cigarettes, and the prescription
drug issued to DesRoche as the objects to be searched for
and seized.

Shortly after midnight, on the morning of July 29, 1980,
the search warrant was executed by Inspector Guilfoyle and
six other members of the Lowell police department. The
defendant opened his apartment door in response to the
knock by a uniformed police officer. After being informed
by the officer that he had a warrant to search the premises,
Wood let the police in.

The stereo equipment and speakers described in the war-
rant were found by police immediately upon their entering
the apartment in the location pointed out by the defendant,
but the cigarettes and DesRoche's medication were not.
While the three uniformed officers stood by, the four plain-
clothes officers then engaged in an extensive search of the
entire apartment for the cigarettes and DesRoche's medica-
tion. During the forty-five minute search, the police seized
objects not described in the warrant, which constitute the
basis of the indictments against the defendant charging
violation of G. L. c. 94C.[4]

The motion judge found that there was sufficient cause to
issue the search warrant, and this finding is not challenged

---

[4] Although the search warrant was issued in the course of a larceny in-
vestigation, the defendant was never charged with larceny.

by the defendant.[5]  The narrow issue before us, then, is
whether the search of the defendant's apartment by the
police exceeded the permissible scope of the search author-
ized by the search warrant.  The defendant contends that
the testimony at the suppression hearing of both himself and
DesRoche makes the conclusion inescapable that the police
knew the location of the cigarettes and the Dilantin at the
outset, but continued to conduct a general search beyond
the scope of the warrant in violation of the Fourth Amend-
ment to the Constitution of the United States.  See *Stanley*
v. *Georgia*, 394 U.S. 557, 569 (1969) (Stewart, J., concur-
ring, with whom Brennan and White, JJ., joined); *Marron*
v. *United States*, 275 U.S. 192, 195-196 (1927).  The motion
judge made subsidiary findings of fact before concluding
that the police did not exceed their authority to search. The
standard of review to be employed by this court is whether
the evidence warranted the findings made by the motion
judge.  See *Commonwealth* v. *Moon*, 380 Mass. 751, 756
(1980); *Commonwealth* v. *Murphy*, 362 Mass. 542, 547
(1972).

The testimony surrounding the execution of the search
warrant at Wood's apartment is conflicting.  DesRoche tes-
tified for the defendant.  He claimed that he emphasized to
the police, on several occasions, that his medication could
be found in one of the stereo speakers and that he had told
the defendant the location of his medication prior to the ex-
ecution of the search warrant.  The defendant testified that
he knew where the cigarettes and Dilantin were, that he
went over to the speaker, removed the cigarettes and med-
ication, and handed them to the police prior to the search of
the rest of his apartment.[6]

---

[5] See note 3, *supra.*

[6] Wood's affidavit in support of the motion to suppress, however, stated
that he did not know about the cigarettes and medication, and that he did
not know their location.  Nevertheless, the affidavit asserts that Wood
found these objects and handed them to the police before any further
search was undertaken.

Three officers testified that they did not know the location of the cigarettes and Dilantin at the time of the execution of the search warrant. Furthermore, the officers testified that they did not discover the cigarettes and medication until they returned to police headquarters with the stereo equipment and the items seized.

The testimony is in agreement that the components of stereo equipment were the only items listed in the warrant which were visible to the officers prior to the search of the rest of the premises. The witnesses also agree that the defendant pointed to a pile of stereo equipment and indicated that all property taken from DesRoche was there. The police testimony was that the search of the rest of the apartment was for the other items listed in the warrant, namely the cigarettes and DesRoche's medication (Dilantin). The police maintained that, as they searched the rest of the apartment for these items, the items seized by the police were found in plain view.

The motion judge found that "the police did not know that the cigarettes and delantin [sic] were located inside the stereo at the time they executed the search warrant." He concluded that the thorough search of the rest of the premises described in the warrant was necessary and proper. Since the scope of the search of the entire premises was permissible, the motion judge then found that the confiscated drugs, drug paraphernalia, and other seized evidence[7] were in plain view and "obviously contraband."

The evidence before the motion judge consisted primarily of oral testimony. "The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses, and not of this court." *Commonwealth* v. *Moon, supra* at 756. "[W]e do not substitute our judgment for [the motion judge's], absent clear error." *Id.* See *Commonwealth* v. *Harmond,* 376 Mass. 557, 560 (1978); *Commonwealth* v. *Murphy, supra.*

---

[7] Other evidence included handwritten notes possibly recording drug transactions.

Where, as here, the testimony is in conflict, we cannot conclude that the motion judge clearly erred in disbelieving the testimony of the defendant and DesRoche regarding the knowledge of the police officers. If the search was proper, there was ample evidence supporting the findings that the confiscated items were found in plain view, and that the identification of the items as contraband by Officer Sheehan, a trained chemist present at the search, was proper.

It is true that, if the items described in the warrant had been found prior to the search, the authority to search ended when the purposes of the warrant had been carried out. See *United States* v. *Highfill*, 334 F. Supp. 700, 701-702 (E.D. Ark. 1971); 2 W. LaFave, Search and Seizure § 4.10, at 162 (1978). Cf. *United States* v. *Micheli*, 487 F.2d 429, 432 (1st Cir. 1973). Implicit in the findings of the motion judge is the finding that the cigarettes and medication were not found until the search was completed and the officers were back at police headquarters. Thus, on the facts found, this is not a case in which the officers continued the search after finding the items named in the warrant. Compare *United States* v. *Highfill, supra.* Here, the officers were entitled to continue the search until all possibilities for concealment on the premises, described in the warrant, had been exhausted. See *Commonwealth* v. *Bond*, 375 Mass. 201 (1978); *Vorhauer* v. *United States*, 426 F. Supp. 839, 842 (E.D. Pa. 1976).

The defendant contends that his assertions as to the location in one pile of all the property taken from the Lund and DesRoche apartment, evidenced by his words, "there it is," limited the intrusion by the search warrant into his private home. Officers executing a valid search warrant are not required to accept the word of the person whose property is being searched as to the location of the objects of the search. *United States* v. *Chadwell*, 427 F. Supp. 692, 696 (D. Del. 1977). See W. LaFave, *supra* at 162. There was no error in the denial of the motion to suppress.

We next consider the defendant's contention that his right to a fair and impartial jury trial was violated by the trial

judge's disallowance of several of the defendant's peremptory challenges.

The defendant does not specify the basis of his claim of right to an unfettered exercise of peremptory challenges. He claims, however, that the erroneous denial by the trial judge of three of his peremptory challenges is reversible error even without a showing of prejudice. We must determine, then, whether the rulings of the trial judge were erroneous, and, if so, whether, absent a showing of prejudice, the defendant is entitled to a new trial. We start our analysis by recognizing the principle that there is no Federal constitutional right to peremptory challenges. *Stilson* v. *United States*, 250 U.S. 583, 586 (1919). See *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965); *Frazier* v. *United States*, 335 U.S. 497, 505-506 & n.11 (1948); *Commonwealth* v. *Soares*, 377 Mass. 461, 483 n.24 (1979); *United States* v. *Turner*, 558 F.2d 535, 538-539 (9th Cir. 1977). Nor is the right to peremptory challenges guaranteed by the Constitution of this Commonwealth. *Commonwealth* v. *Reid*, 384 Mass. 247, 254 (1981). What is guaranteed by both the Sixth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution is the right to be tried by an impartial jury. *Frazier* v. *United States, supra* at 505. *Stilson* v. *United States, supra. Commonwealth* v. *Reid, supra.*

The right to use peremptory challenges is found in the common law, statutes, or rules of court. *Pointer* v. *United States*, 151 U.S. 396, 407-411 (1894). In Massachusetts, the right to peremptory challenges, in effect at the time of the criminal trial involved in *Commonwealth* v. *Soares, supra*, was set forth in G. L. c. 234, § 29, prior to its amendment by St. 1979, c. 344, § 10 (effective July 1, 1979). The right to peremptory challenges, effective at the time of the trial of the case at bar, is found in Mass. R. Crim. P. 20 (c), 378 Mass. 889 (1979).[8] The procedure governing the exercise of

---

[8] The judge gave both the prosecution and the defense six peremptory challenges.

the right to peremptory challenges is found in Rule 6 of the Rules of the Superior Court (1974). See *Commonwealth* v. *Reid, supra* at 252 n.10. The purpose of the properly exercised peremptory challenge is to aid the constitutional right to a fair and impartial jury. See *Swain* v. *Alabama, supra* at 216-220. Traditionally, the latitude allowed in the exercise of peremptory challenges is wide: "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control." *Commonwealth* v. *Soares, supra* at 484, quoting *Swain* v. *Alabama, supra* at 220. The right to an unfettered exercise of peremptory challenges, however, is tempered by art. 12. Article 12 has been construed by this court to proscribe "the use of peremptory challenges to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community." *Commonwealth* v. *Soares, supra* at 486. Cf. *Taylor* v. *Louisiana,* 419 U.S. 522, 537 (1975). In *Soares,* we made it clear that our holding that limited the use of peremptory challenges was restricted to those peremptory challenges which were exercised "to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group." *Soares, supra* at 488. We said further that we viewed art. 1 of the Declaration of Rights, as amended by art. 106 of the Amendments (Equal Rights Amendment), "as definitive, in delineating those generic group affiliations which may not permissibly form the basis for juror exclusion: sex, race, color, creed or national origin." *Id.* at 488-489 & n.33.

We begin with the presumption of the proper use of the peremptory challenges by defense counsel. Once the trial judge determined the presumption to be rebutted by his own observation,[9] or based on the objections of the prose-

---

[9] The defendant has not questioned the discretion of the trial judge, under *Commonwealth* v. *Soares,* 377 Mass. 461 (1979), to inquire on his own initiative into the basis of a peremptory challenge.

cutor, the burden of justification fell on defense counsel. However, in determining the presumption of proper exercise to have been rebutted, either the judge first must have decided or the prosecutor must have shown the judge that "(1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership." *Id.* at 490.

The defendant argues that his use of peremptory challenges did not involve a defined or discrete group. The defendant claims further that the trial judge viewed the challenges of the defendant to be based on age, and erroneously applied to this category the guidelines established by this court in *Commonwealth* v. *Soares, supra.* The Commonwealth argues, however, that the sex of the prospective juror was the basis of the judge's disallowance of the peremptory challenges exercised by the defendant, and that the disallowances were proper under the *Soares* rule. Our review of the transcript reveals that the defendant's contentions are correct.

During the course of jury empanelment, after the judge had excused for cause some of the prospective jurors from the venire, the prosecutor challenged four of the prospective jurors. The trial judge questioned two of these challenges sua sponte. The basis of the inquiry by the judge was an apparent exclusion of young males approximately the same age as the defendant. The prosecutor offered as justification for his challenges the fact that both challenged jurors were pursuing careers in the medical field. Because this case involved the chemical analysis of drugs, the prosecutor feared that these veniremen would have a tendency to question more critically the Commonwealth's evidence. The trial judge accepted this reasoning and allowed the challenges to stand, but warned, "I will look at people in that category." The challenged jurors were replaced, and the prosecutor challenged one more juror without any inquiry by the trial judge.

Defense counsel then exercised the defendant's right to challenge six prospective jurors. The prosecutor objected to all of the defendant's challenges on the ground that "[e]ach of the people that he's challenged are of a much older age group, and four out of the six are older females. I'd raise a motion under Commonwealth versus Soares, the defendant is challenging people on the basis of a particular age group, and the Commonwealth is entitled to a jury of all types."

In discussing the prosecutor's objection to the defendant's challenges, the trial judge indicated that he was concerned only with the three of the defendant's challenges involving elderly women. "The remaining panel, we have a woman around seventy years of age. The remaining panel, they represent the only woman [sic] on the panel that age, and the remaining — I mean in the box of that age — and the age of the remaining panel seems to me to be devoid of that, as I look through the list. . . . They represent the only people in the box of that age and sex. There are no people in the remaining panel of that age and sex. There's no one. So, you'll have to give me some reasons." Defense counsel pointed out that there were two older female jurors on the panel whom he had not challenged. The judge disagreed by noting that only one of the two unchallenged jurors referred to by defense counsel was in the age bracket in question.[10] Again, the judge asked for justification of the challenges, "[y]ou challenged three of the four women in that age bracket, so I'm going to ask you to give me reasons." Stating that his challenges were not based on age, defense

[10] Because the age bracket was never defined, there is some confusion between defense counsel and the trial judge surrounding these challenges. Defense counsel originally felt that the prospective jurors in seats numbered 2, 8, 10, and 6 were elderly women. The judge disagreed with such a characterization of these jurors, apparently because of confusion over exactly whom defense counsel had challenged. The age of the jurors in seats numbered 10 and 6 is never established in the record. The judge stated that the juror in seat number 8 was sixty-seven years old. While the precise age of the juror in seat number 2 is never established, it may be inferred from the record that she was under sixty-five years of age.

Although the age bracket is never defined by anyone, it can be inferred to be sixty-five or older.

counsel offered his reason for one of the three peremptory challenges about which the trial judge inquired. He did not offer any justification for the remaining two challenges except to repeat that the challenges were not based on age. The judge accepted the reasoning offered for the one challenge and disallowed the remaining two challenges, stating, "I'm telling you that because I see a definable category . . . . All I know is that of the four women in that group — and there are no [sic] remaining on the panel — you've isolated, of your six challenges, half of them have gone to that category, leaving one woman on the panel, in the box, and none on the panel."

The jury empanelment continued, and defense counsel peremptorily challenged another prospective juror. The judge stated sua sponte, "A woman sixty-seven years of age. I'll need a reason." Counsel responded that there were several elderly women on the jury and that there were no young males on the jury. The trial judge was unsatisfied and stated, "That's not the test. The test is, you have challenged . . . every women [sic], sixty-five or above, with one exception . . . ." He disallowed the challenge.[11]

Three of the defendant's peremptory challenges involving elderly women were disallowed. The final petit jury were twelve women and two men (including two alternates). These figures clearly do not show a systematic exclusion of women from the venire. It appears that the trial judge fo-

---

[11] It should be noted that the venire in this case was drawn from a jury pool under G. L. c. 234A, which greatly reduces disqualifications from jury service, compare G. L. c. 234A, § 4, with G. L. c. 234, § 1, and which requires selection for jury service at random without exemption or exclusion because of "race, color, religion, sex, national origin, economic status, or occupation." G. L. c. 234A, § 3, inserted by St. 1982, c. 298, § 1. While the number of veniremen is not shown, the prospective jurors called and examined were ten males and eighteen females. Challenged for cause, or excused, were one male and two females. The prosecutor peremptorily challenged five males and one female. The defendant peremptorily challenged six females and two males (including the three challenges which were disallowed). The disparity between the defendant's total peremptory challenges (eight) and the peremptory challenges given (six) is not explained in the record.

cused his attention on peremptory challenges by the prosecution involving young men, and peremptory challenges by defense counsel involving elderly women. The distinguishing factor or common denominator was not sex, but age. The issue before us, then, is whether the *Soares* rule on which the judge relied applies to age.

The question has already been answered.[12] Age does not establish a group described in art. 1, on which we relied in *Soares, supra* at 488-489, as being "definitive" of the groups which were within the *Soares* rule.[13] Classifications based on age are not a discrete or defined group so as to render peremptory challenges of the defense counsel improper under the *Soares* holding.

We pointed out in *Commonwealth* v. *Soares, supra* at 492, that the right to be tried by an impartial jury is so basic to a fair trial that an infraction can never be treated as harmless error. Thus, despite the commendable efforts and sensitivity of the trial judge, the erroneous denial of the right to exercise a proper peremptory challenge is reversible error without a showing of prejudice. See *Commonwealth* v. *A Juvenile (No. 2),* 384 Mass. 390, 392-394 (1981); *Swain* v. *Alabama,* 380 U.S. 202, 219 (1965).

The judgments are reversed, and the verdicts are set aside. We remand these cases for a new trial to be conducted in accordance with this opinion.

*So ordered.*

---

[12] See our discussion *supra* at 560.

[13] The American Heritage Dictionary 346 (New College ed. 1981) defines "definitive" as "1. Precisely defining or outlining; explicit. 2. Determining finally; conclusive; decisive . . . ." Under the word "definite," the dictionary states, "*definitive* more often refers, in addition, to what is unalterably final." We note, also, that G. L. c. 234A, § 3, which requires the court to "strictly enforce" that section's mandate against group discrimination, also does not list age as a protected group.