COMMONWEALTH *vs.* NATHANIEL GREEN.

Suffolk. May 2, 1995. - July 17, 1995.

Present: LIACOS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Jury and Jurors. Constitutional Law*, Jury. *Practice, Criminal*, Jury and jurors, Challenge to jurors. *Joint Enterprise. Accessory and Principal. Evidence*, Dying declaration.

Discussion of the purpose and use of peremptory challenges. [776]

At a murder trial, the judge incorrectly required defense counsel to provide reasons for certain peremptory challenges of prospective jurors without following the procedures set forth in *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979) [776-777]; further, there was no basis in the record on which to conclude that the challenges were improperly based on the jurors' race [777]; moreover, the judge used an improper standard in rejecting defense counsel's explanations for the challenges [777-778]: the judge's erroneous disallowance of the peremptory challenges was reversible error without the requirement of a showing of prejudice [778].

Evidence at the trial of indictments for murder and related offenses did not warrant the judge's instruction on joint venture where the only theory of the case was that the defendant was the principal actor, nor did the evidence warrant an instruction on accessory before the fact, for the same reason: where it was possible the jury returned verdicts of guilt based on these theories, the verdicts were set aside. [778-781]

At the retrial of a murder case, if a certain statement of the victim is to be offered as a dying declaration, the judge should make the appropriate findings before admitting the evidence and should instruct the jury as required by the humane practice rule. [781-782]

INDICTMENTS found and returned in the Superior Court Department on April 9, 1992.

The case was tried before *Thomas E. Connolly*, J.

*Wendy Sibbison* for the defendant.

*Jill P. Furman*, Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. A jury of the Superior Court convicted the defendant of murder in the first degree, two armed assaults with intent to murder, unlawful possession of a firearm, and unlawful possession of ammunition.[1] On appeal, the defendant asserts several grounds for reversal. We conclude that the trial judge erred in denying the defendant the right to exercise peremptory challenges and by charging the jury on a joint venture theory and a theory of accessory before the fact when those instructions were not warranted. Either of these errors requires reversal, and, accordingly, we reverse. We also discuss one other issue that may arise during retrial.

From the evidence adduced at trial, the jury could have found the following facts. At around 8:30 P.M. on July 7, 1991, the victim, Clive Anthony Allen,[2] was sitting in the driver's seat of a rented Chevrolet automobile. The victim's girl friend, Keisha Hood, was sitting next to him with their two month old daughter, Kyoishi. A light blue automobile pulled up next to the Chevrolet. From the passenger's side of the blue automobile, four to six shots were fired into the driver's side of the Chevrolet. The blue automobile then backed away and drove off.

As the bullets entered the Chevrolet, Hood covered Kyoishi with her body and the victim covered both of them with his body. One bullet hit the victim, entering his left rear shoulder and piercing both lungs. Holding Kyoishi, Hood slipped out of the passenger side of the Chevrolet and crawled away. Neither she nor Kyoishi was hit. The victim exited the Chevrolet, walked to the front of it, and collapsed. He was taken to Boston City Hospital where he was pronounced dead at 9:02 P.M.

At trial, Hood testified that, after the first shot was fired, she turned and saw the defendant, whom she knew as "Damien." Hood testified that she identified the defendant from about six feet away, and that he was in the passenger

---

[1]The ammunition conviction was placed on file with the defendant's consent.

[2]The victim also was known as "Gary Haughten" and "Greg Solomon."

seat of the blue automobile. She testified that she looked directly at the defendant for "a good five minutes" before covering Kyoishi and that she asked the victim, "Is that really Damien?" Both before and after the victim answered, Hood testified, she was sure that the assailant was Damien. After four more shots were fired, Hood looked up and saw the defendant pointing a gun at them. After a minute or two, the blue automobile backed away. The victim then said to Hood, "Damien fucked up."

Andre Wright, a bystander at the scene of the shooting, testified that the shooter sat on the passenger side of the blue automobile and wore a hat. Wright could not identify the shooter because the shooter sank low into his seat as the blue automobile backed away.

Prior to the shooting, Hood had met the defendant a few times over the course of several months, when she and the victim had engaged in some drug transactions with him. Three weeks before the shooting, the defendant sold the victim a quantity of cocaine. The victim withheld $200 because the weight of the cocaine was less than the agreed-upon weight.

On the Tuesday before the shooting, the defendant had chased Hood down the stairs from her apartment door, held up a stick and said, "If Gary [i.e., the victim] don't pay me my $200, I'm going to fuck you and your kids up." The next day, the victim came home with his ear "split open." Over the defendant's objection, Hood testified that the victim told her who had assaulted him, but Hood did not testify as to the identity of the assailant given by the victim in that conversation.

1. *Denial of peremptory challenges.* During the jury empanelment, the judge denied the defendant's peremptory challenges against two jurors who were black. The defendant is black, as are Hood and Kyoishi. The victim was black also.

After several venire members were excused for cause, sixteen prospective jurors were seated in the jury box. At that time, two of the prospective jurors were black. The Commonwealth exercised two peremptory challenges. Defense counsel

exercised seven challenges, none of which was against the two black prospective jurors. The challenges resulted in two additional black venirepersons being seated, Juror 6-10 and Juror 6-13.

Defense counsel then asked the judge to conduct a voir dire of Juror 6-10, on the basis that the juror had the same last name as the victim in a recent murder case. Defense counsel represented the defendant in that previous case, and the victim in that case had a large family. The judge conducted the voir dire, resulting in the revelation that Juror 6-10 had a sister-in-law who was the victim of a shooting. That case, however, had not yet gone to trial.

Defense counsel requested that Juror 6-10 be excused for cause. The judge then inquired of Juror 6-10 whether he could be unbiased despite his sister-in-law's shooting. Juror 6-10 replied affirmatively, and the judge ruled him indifferent. The judge then refused to excuse Juror 6-10 for cause, stating that defense counsel could peremptorily challenge him.

Defense counsel then attempted peremptorily to challenge Juror 6-10, along with Juror 6-13 and Juror 6-9. The prosecution objected, asserting that there was a pattern by defense counsel of challenging black jurors. See *Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979). Defense counsel then requested that the judge determine if Juror 6-10 was related to the victim in the earlier murder trial. The judge made the inquiry, but Juror 6-10 indicated that he did not know.

The judge then inquired of defense counsel, "What do you say about the Commonwealth's objection to your challenging two of the three blacks on the jury? Do you have cause to state for either one of these folks?" Defense counsel replied that as for Juror 6-10, he was concerned about the juror's impartiality given that his sister-in-law was a shooting victim. With respect to Juror 6-13, defense counsel stated that he was concerned because her father and brother were Boston police officers, and the credibility of witnesses who were

Boston police officers would be an issue at trial.[3] Furthermore, the defendant had unrelated charges in a highly publicized pending case regarding the shooting of a Boston police officer.

The judge disallowed the challenges, finding that there "seems to be somewhat of a pattern of knocking off black people from this jury," characterizing defense counsel's reasons for the peremptory challenges as "arbitrary."[4] Jurors 6-10 and 6-13 were seated on the jury, resulting in a jury with four black jurors. Subsequently, the judge selected Juror 6-13 as the foreperson.

The defendant argues that the judge committed reversible error by denying him the two peremptory challenges. The defendant also asserts that the judge forced the inclusion of Jurors 6-10 and 6-13 in violation of the jurors' equal protection rights.[5]

---

[3]According to her confidential juror questionnaire, Juror 6-13's father and uncle are police officers. Nothing turns on this distinction.

[4]The full text of the exchange between the judge and defense counsel was as follows:

> THE JUDGE: "I'm going to refuse to allow your request to challenge Jurors 6-10 and 6-13, based on the fact that they are people of color; and under the cases from our Supreme Court of the United States, in my opinion there has not been sufficient grounds to exclude those people. . . . Because, basically, the reasons put forth by counsel to challenge these people — these people being people of color, where the victims are black persons, where the Defendant is black, that there seems to be somewhat of a pattern of knocking off black people from this jury. And I have, pursuant to my obligation under the Supreme Court of the United States case decisions, on Constitutional grounds, asked the question what the bases were. And, after hearing what the bases were, I have determined that it was not satisfactory for such an arbitrary reason. . . ."
>
> DEFENSE COUNSEL: "For there [*sic*] record, there has only been a pattern of challenging law enforcement people who might be closely associated with the other case . . . ."
>
> THE JUDGE: "They have answered the questions affirmatively from this court that they can decide this case pursuant to their sworn oath, under the facts and law in this case."

[5]Because we hold that in denying the peremptory challenges, the judge denied the defendant the right to be tried by an impartial jury, we need not reach the issue of the jurors' constitutional rights.

While not explicitly guaranteed by the Federal Constitution or the Constitution of this Commonwealth, the purpose of peremptory challenges is to aid in assuring the constitutional right to a fair and impartial jury. *Commonwealth* v. *Wood*, 389 Mass. 552, 559-560 (1983). Therefore, the erroneous disallowance of a peremptory challenge is reversible error without a showing of prejudice. *Commonwealth* v. *Hyatt*, 409 Mass. 689, 692 (1991), *S.C.*, 419 Mass. 815 (1995). *Commonwealth* v. *Wood, supra* at 564, and cases cited.[6]

There is an initial presumption that the use of a peremptory challenge is proper. This presumption may be rebutted, however, by a showing that (1) a pattern of conduct has developed whereby prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood that they are being excluded from the jury solely on the basis of their group membership. *Commonwealth* v. *Soares, supra* at 489-490. Once the issue of racially-based peremptory challenges is raised, the judge must determine whether the requisite prima facie showing of impropriety has been made. *Id.* at 490. If the judge determines that a sufficient showing has been made, the burden shifts to the allegedly offending party to provide a group-neutral reason for challenging the prospective juror. *Id.* at 491.

In this case, the judge shifted the burden to the defendant without first making a finding that the Commonwealth had made a sufficient showing of impropriety. We note that by requiring defense counsel to provide reasons for his peremptory challenge before making a finding of impropriety, the judge failed to follow the procedure set forth in *Commonwealth* v. *Soares, supra*. Furthermore, we question whether the judge actually made any finding of impropriety, given that he merely stated, in a qualified manner, that there was

---

[6]Based on dictum in one of our cases, the Commonwealth urges us to adopt a rule that requires a showing of prejudice in order to reverse a defendant's conviction on the basis of an erroneous denial of a peremptory challenge. *Commonwealth* v. *Amirault*, 399 Mass. 617, 630 (1987). We decline to do so. In the *Amirault* case, this court did not conclude that the judge erred in disallowing the peremptory challenge.

"somewhat of a pattern" of striking black jurors, and that he did not find a likelihood of exclusion on the basis of race.

Even if the judge had made a finding of impropriety, that finding would have been clearly erroneous. In *Soares*, we enumerated the factors to be applied in determining whether there is a likelihood that prospective jurors were being excluded on the basis of group membership. These factors include assessing the numbers or percentages of group members excluded, common group membership of the defendant and the jurors excluded, and common group membership of the victim and remaining jurors. *Id.* at 490.

Here, out of the twenty-three prospective jurors presented to him, defense counsel challenged two of four (50%) black persons and eight out of nineteen (42%) nonblack persons. Defense counsel challenged essentially the same percentage of black and nonblack venire members presented to him. Furthermore, out of those venire members presented to him, 83% (nineteen out of twenty-three) were nonblack and 17% (four out of twenty-three) were black. Out of the ten venire members he challenged, 80% (eight out of ten) were nonblack and 20% (two out of ten) were black. As a statistical matter, the record shows little basis for finding that the peremptory challenges were used improperly. See *Commonwealth* v. *Hyatt, supra* at 691-692.

When we consider the other factors enumerated in *Soares*, we are again compelled to conclude that there was no basis in the record for finding that defense counsel had improperly challenged the two black jurors on the basis of their race. Although the victim and the challenged jurors shared a common group membership, so did the defendant. See *Commonwealth* v. *Robinson*, 382 Mass. 189, 195-196 (1981).

Assuming arguendo that the judge was warranted in requiring the defendant to explain his use of peremptory challenges, the judge used an erroneous legal standard in rejecting the defendant's explanations for the peremptory challenges. The judge believed that defense counsel's reasons were not sufficient because the jurors unequivocally had stated that they could be impartial. Defense counsel, how-

ever, was not required to establish that the jurors lacked impartiality. That is the kind of showing required for a challenge for cause. *Commonwealth* v. *Soares, supra* at 491. The purpose of a peremptory challenge is to "eliminate those jurors perceived as harboring subtle biases with regard to the case, which were not elicited on voir dire or which do not establish legal cause for challenge." *Id.* at 483-484.

The proper inquiry is whether defense counsel gave clear and reasonably specific reasons for his challenge which were personal to the juror and not based on the juror's group affiliation. *Commonwealth* v. *Burnett*, 418 Mass. 769, 771 (1994). If defense counsel offers such reasons, the judge should specifically determine whether they were bona fide or a mere sham. *Id.*

Defense counsel gave clear and specific reasons for challenging Jurors 6-10 and 6-13 that were personal to the jurors and not based on their race. These reasons might not have sufficed for a challenge for cause, but were adequate to demonstrate that he did not peremptorily challenge the jurors on the basis of race.[7] By requiring defense counsel to make the showing required for challenges for cause, the judge used an erroneous standard in denying the defendant his peremptory challenges. As already noted, the erroneous disallowance of a peremptory challenge is reversible error and no showing of prejudice is required. *Commonwealth* v. *Hyatt, supra* at 692. *Commonwealth* v. *Wood, supra* at 564.

2. *Charges on joint venture and accessory before the fact liability.* At the close of evidence, over the defendant's objections, the trial judge instructed the jury on the law regarding joint venture and accessory before the fact. The defendant argues that the Commonwealth's evidence does not support charging the jury on either of these theories. We agree.

---

[7]We note that the defendant also peremptorily challenged two prospective nonblack jurors who had friends or relatives in law enforcement professions. Challenges to nonblack jurors who are similarly situated are also relevant in considering whether the defendant gave a legitimate reason for a peremptory challenge. *Commonwealth* v. *Soares*, 377 Mass. 461, 491, cert. denied, 444 U.S. 881 (1979).

In order for a defendant to be convicted of joint venture, there must be evidence that the defendant was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Longo*, 402 Mass. 482, 486 (1988), quoting *Commonwealth* v. *Bianco*, 388 Mass. 358, 366, *S.C.*, 390 Mass. 254 (1983). In order to be found guilty on a theory of accessory before the fact, there must be evidence that the defendant aided, counseled, hired, or otherwise procured another to commit the crime. G. L. c. 274, § 3 (1992 ed.). *Commonwealth* v. *Raposo*, 413 Mass. 182, 184-185 (1992).

Under either theory, the Commonwealth must present sufficient evidence at trial to prove beyond a reasonable doubt each element of that theory. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Furthermore, "[u]nder a theory of joint venture premeditated murder during which another person carried and used the gun, the Commonwealth must 'establish beyond a reasonable doubt that the defendant knew [the other person] had a gun with him.'" *Commonwealth* v. *Lydon*, 413 Mass. 309, 312 n.2 (1992), quoting *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988). See *Commonwealth* v. *Cook*, 419 Mass. 192, 205 (1994).

The Commonwealth failed to offer evidence to raise the issue or from which a rational jury could find beyond a reasonable doubt that the defendant was a joint venturer. The Commonwealth needed to present evidence that there was a principal other than the defendant who committed the shooting. The Commonwealth also needed to present evidence that the defendant was, by agreement, willing and able to assist this principal in the shooting, and knew that the principal had a gun. The Commonwealth failed to offer any evidence of this sort. It presented this case solely on the theory that the defendant was the principal who fired the shots which caused the victim's death.

The sole witnesses to the shooting who testified, Hood and Wright, both saw two individuals, the driver and the shooter, in the automobile. Only Hood's testimony established the defendant as one of those individuals. Hood unequivocally identified the defendant as the shooter. Hood never suggested, and the Commonwealth introduced no other evidence, that there was a possibility that the defendant could have been the driver. Even if the jury did not credit Hood's identification of the defendant as the shooter, there was no other evidence to show that the defendant was present at the scene of the shooting.

Citing *Commonwealth* v. *Chipman*, 418 Mass. 262, 267-269 (1994); *Commonwealth* v. *Cohen* 412 Mass. 375, 380 (1992); and *Commonwealth* v. *Mahoney*, 406 Mass. 843, 847 (1990), the Commonwealth argues it could establish the defendant's guilt as a joint venturer without proving precisely which individual actually committed the crimes and which individual aided and abetted. The Commonwealth's reliance on these cases is misplaced. In the *Chipman, Cohen,* and *Mahoney* cases, there was evidence establishing that there were two or more individuals culpable for the crime, and that one of the culpable individuals was the defendant. There was an absence of evidence, however, as to which individual was the principal and which was a joint venturer. Therefore, in those cases, the jury would have been warranted in inferring that the defendant was either a principal or a joint venturer.

In contrast, the critical factor in this case is that the evidence tended solely to show that the defendant was the principal. While there was clearly enough evidence to permit the jury to find the defendant was the principal, a rational jury would not be warranted in inferring that he was not the principal, but was present at the scene as the joint venturer. Such an inference would be speculative and highly unreasonable, because the evidence in this case solely pointed to the defendant's role as the principal. Cf. *Commonwealth* v. *Daughtry*, 417 Mass. 136, 139-140 (1994) (no error in charging jury on joint venture where Commonwealth offered

evidence from which jury could infer that either defendant or accomplice fired fatal shot).

Similarly, the Commonwealth offered no evidence from which a rational jury could conclude that the defendant was an accessory before the fact. Hood's testimony established that the defendant had a motive to kill the victim. She further established that he had threatened the victim. The Commonwealth, however, introduced no evidence tending to prove that the defendant aided, counseled, hired, or procured an unknown principal beforehand to commit the shootings. G. L. c. 274, § 3. To infer from the existence of a motive and a single threat that the defendant hired or procured someone else to shoot the victim requires impermissible speculation and conjecture. See *Commonwealth* v. *Mazza*, 399 Mass. 395, 399 (1987); *Commonwealth* v. *Salemme*, 395 Mass. 594, 599-600 (1985).

It is possible, even likely, that the jury relied on the theory of joint venture or accessory before the fact in returning their verdicts.[8] The possibility that the verdicts were based on theories for which the Commonwealth failed to offer sufficient evidence for a rational jury to find guilt beyond a reasonable doubt necessitates our setting them aside. *Commonwealth* v. *Floyd P.*, 415 Mass. 826, 833 (1993). *Commonwealth* v. *Mandile*, 403 Mass. 93, 98-99 (1988).

3. *Dying declaration evidence.* We discuss one issue raised by the defendant that is likely to arise at retrial. During Hood's testimony, the prosecutor was permitted over the defendant's objection to elicit from Hood the victim's statement that "Damien fucked up." The Commonwealth argues that this statement was properly introduced as a dying declaration. While there was evidence that might have provided the foundation of a dying declaration, the judge failed to make the requisite finding that the victim believed at the time of

---

[8]During deliberations, the jury sent a note to the judge which indicates that they were confused by the joint venture charge. The note read: "If the Defendant sends someone else in his place to do a crime, does that mean the individual is still guilty or close to guilty?" In response, the judge repeated the unwarranted charge on joint venture.

the statement that he was to die imminently. *Commonwealth* v. *Key*, 381 Mass. 19, 22-23 (1980). P.J. Liacos, Massachusetts Evidence § 8.6, at 454-455 (6th ed. 1994). In addition, the judge failed to give the instruction required by the so-called humane practice rule. *Id.* at § 3.9.1, at 98-99, and cases cited. On remand, if this statement is to be introduced, the judge should first determine by a preponderance of the evidence that the victim believed his death was imminent and that the other elements of a dying declaration were present. If the statement is admitted, the judge should instruct the jury as required by the humane practice rule.

4. *Conclusion.* The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial on the theory of individual liability.

*So ordered.*