NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12549


COMMONWEALTH  vs.  QUINTON K. WILLIAMS.



Plymouth.    October 2, 2018. - February 13, 2019.

Present (Sitting at Worcester):  Gants, C.J., Lenk, Gaziano,
Lowy, Budd, Cypher, & Kafker, JJ.



Jury and Jurors.  Practice, Criminal, Jury and jurors, Challenge
to jurors.




Complaint received and sworn to in the Brockton Division of
the District Court Department on March 1, 2016.

The case was tried before Daniel J. Hourihan, J.

The Supreme Judicial Court granted an application for
direct appellate review.



Edward Crane for the defendant.
Gail M. McKenna, Assistant District Attorney, for the
Commonwealth.
Anthony Mirenda, Caroline S. Donovan, Amanda Hainsworth,
Christopher J. Cifrino, & Justin Marble, for Massachusetts
Association of Criminal Defense Lawyers & others, amici curiae,
submitted a brief.
Rebecca Kiley, Committee for Public Counsel Services, for
Committee for Public Counsel Services, amicus curiae, submitted
a brief.

BUDD, J.  The defendant, Quinton K. Williams, an African-American man, was charged with possession of a class B substance with the intent to distribute pursuant to G. L. c. 94C, § 32A (a).  During jury selection, over the defendant's objection, the judge excused for cause a prospective juror who stated that she believed that "the system is rigged against young African American males."  The defendant subsequently was convicted and now appeals, claiming that the judge abused his discretion in dismissing the prospective juror.

Our jurisprudence regarding how to assess beliefs or opinions expressed by prospective jurors during voir dire has been less than clear.  Accordingly, we take this opportunity to set forth the factors that a judge should consider when a prospective juror discloses a belief or opinion based on his or her world view.  We conclude that although the voir dire was incomplete, it did not prejudice this defendant.  Thus, we affirm the conviction.[1]

---

[1] We acknowledge the amicus briefs submitted by the Committee for Public Counsel Services and by the Massachusetts Association of Criminal Defense Lawyers, the American Civil Liberties Union of Massachusetts, the New England Innocence Project, the Innocence Project, the Charles Hamilton Houston Institute for Race and Justice, the Criminal Justice Institute at Harvard Law School, retired Supreme Judicial Court Justice Geraldine S. Hines, retired United States District Court Judge for the District of Massachusetts Nancy Gertner, Harvard Law School Professor Ronald S. Sullivan, Jr., and Northeastern University Professor Jack McDevitt.

Background.  During jury selection, the judge asked questions of the entire venire, including the following:

"[Y]ou've been read a copy of the complaint which charges [the defendant], which is just an allegation, that he possessed [a] class B controlled substance, cocaine, with the intent to distribute.

"Is there anything about the subject matter or your views about the subject matter that would affect your ability to be fair and impartial in deciding the case?"

Prospective juror no. 15 (prospective juror), among other potential jurors, answered in the affirmative.  Subsequently, the judge and the prospective juror had the following exchange at sidebar:

Q.:  "I believe you might have answered a question affirmatively.  Was that a -- a hardship question?"

The clerk:  "No. . . .  It was on fair and impartial . . . [o]r bias."

Q.:  "You feel like you might have a bias in the case?"

A.:  "Yeah.  I worked with, like, low income youth in a school setting.  I worked a lot with people who were convicted of -- like teenagers who were convicted of drug crimes.

"And frankly, I think the system is rigged against young African American males.

"I'm happy to serve on the jury trial -- on the jury because I think it's important, but -- "

Q.:  "You think that belief might interfere with your ability to be fair and impartial?"

A.:  "I don't think so."

Q.:  "You -- you think you can put aside that opinion and bias -- "

A.:  "I don't think I can put it aside.  I think that's --"

Q.:  "No?"

A.:  " -- the lens that I view the world through, but I think I can be unbiased -- I think I can be -- I think I can listen to the evidence."

Q.:  "All right.  But you're going to have to be able to put that out of your mind and look at only the evidence. Do you think you can do that?"

A.:  "I think so."

Q.:  "I have to be assured that you can though.  You think you -- as -- as you sit in there, it might -- your experiences with -- with people in that type of a situation is going to have you look at it differently?"

A.:  "Probably."

Q.:  "Okay.  Step over there for a minute."

When the prospective juror stepped away from the sidebar, the Commonwealth requested that she be excused for cause and the following discussion ensued between the judge and the parties:

The prosecutor:  "I ask that she be excused for cause."

The judge:  "Okay.  What do you say?"

Defense counsel:  "Judge, I'm objecting.

"I mean there -- there's -- the drug -- the issues regarding the mass incarceration of young African American males has been all over the news.  Everybody has read about it.  This is -- she has a little more information, but she did say she could be impartial.

"And by the way, he's not a juvenile.  He's an adult."

The judge:  "Yeah.  But he's a youthful looking guy, and she says she's going to have trouble.  She hesitated quite

a bit, Counsel, and I -- I -- I find on the record that she really struggled with it.

"She said I'll try to and then that --

"I'm going to let her go for cause. I think -- "

The judge thereafter excused the prospective juror for cause. By the end of jury selection, the Commonwealth and the defendant each had one remaining peremptory challenge. Ultimately, the jury found the defendant guilty. We granted the defendant's application for direct appellate review.

Discussion. The defendant argues on appeal that it was error to dismiss the prospective juror for cause because neither her work experience nor her belief that the criminal justice system is unfair to African-American men rendered her unfit to serve, and further that the dismissal was prejudicial.

We agree that holding particular beliefs about how African-American men are treated in the criminal justice system should not be automatically disqualifying. See Mason v. United States, 170 A.3d 182, 187 (D.C. 2017). However, that is not what happened here. The judge undertook to determine whether, given her opinion about the criminal justice system, the prospective juror could nevertheless be an impartial juror in the trial of an African-American man. However, the voir dire ultimately was incomplete because the judge did not inquire further to determine whether, given the prospective juror's beliefs based

on her life experiences, she nevertheless could fairly evaluate the evidence and follow the law.

Instead, the judge decided that the prospective juror was not able to be impartial because she expressed uncertainty about being able to "put aside" her beliefs and experiences and because she acknowledged that she would look at the case "differently" due to her experiences.  As discussed infra, a judge in this situation should focus not on a prospective juror's ability to put aside his or her beliefs formed as a result of life experiences, but rather on whether that juror, given his or her life experiences and resulting beliefs, is able to listen to the evidence and apply the law as provided by the judge.

A judge's discretion in this realm, although broad, is rooted in determining a prospective juror's impartiality based on the juror's answers in a sufficiently thorough voir dire. Because the voir dire of the prospective juror here did not address whether she could fairly evaluate the evidence and apply the law given her belief regarding the justice system, the judge's assessment of her ability to be a fair and impartial juror was incomplete.  However, because we conclude that the defendant was not prejudiced as a result, we affirm.

1.  Standard.  A criminal defendant is entitled to a trial by an impartial jury pursuant to the Sixth Amendment to the

United States Constitution and art. 12 of the Massachusetts Declaration of Rights.  See Commonwealth v. Vann Long, 419 Mass. 798, 802 (1995), and cases cited.  That is, each juror must be "impartial as to the persons involved and unprejudiced and uncommitted as to the defendant['s] guilt or past misconduct." Commonwealth v. Ricard, 355 Mass. 509, 512 (1969).  General Laws c. 234A, § 67A, addresses the situation when a prospective juror indicates that he or she may not be able to be impartial, stating in pertinent part:

> "To determine whether a juror stands indifferent in the case, if it appears that, as a result of the impact of considerations which may cause a decision to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall, or the parties or their attorneys may, with the permission and under the direction of the court, examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may cause a decision to be made in whole or in part upon issues extraneous to the issues in the case."

Thus, if it appears that a juror might not stand indifferent, the judge must hold an individual voir dire, the scope of which is within the judge's sound discretion.  See Commonwealth v. Flebotte, 417 Mass. 348, 355 (1994).  Concluding whether a prospective juror stands indifferent is also within the judge's discretion.  Commonwealth v. Ruell, 459 Mass. 126, 136, cert. denied, 565 U.S. 841 (2011).  However, this

discretion is not unfettered; the judge's conclusion must be supported by a voir dire that sufficiently uncovers whether the prospective juror can fairly evaluate the evidence and follow the law.  See Commonwealth v. Perez, 460 Mass. 683, 688 (2011) ("judge's duty is to 'examine jurors fully regarding possible bias or prejudice'").

We have not been particularly precise when discussing the handling of juror opinions, and, as a result, our jurisprudence is somewhat muddled regarding the proper procedure for determining impartiality when a prospective juror expresses any preconceived opinions he or she has regarding the case to be tried as compared to an opinion formed based on his or her life experiences or belief system.  Nonetheless, there is an important difference between the two:  asking a prospective juror to put aside his or her preconceived notions about the case to be tried is entirely appropriate (and indeed necessary)[2]; however, asking him or her to put aside opinions formed based on his or her life experiences or belief system is not.

We acknowledge that we have said repeatedly that, in determining juror impartiality, the general rule is that a judge

---

[2] The same is true for other extraneous information related to the trial but not admitted in evidence.  See, e.g., Commonwealth v. Blanchard, 476 Mass. 1026, 1029 (2017); Commonwealth v. Entwistle, 463 Mass. 205, 221-222 (2012), cert. denied, 568 U.S. 1129 (2013).

must look at whether jurors can "set aside their own opinions." See, e.g., Commonwealth v. Kennedy, 478 Mass. 804, 819 (2018); Commonwealth v. Brown, 477 Mass. 805, 821 (2017), cert. denied, 139 S. Ct. 54 (2018); Commonwealth v. Andrade, 468 Mass. 543, 547-548 (2014); Perez, 460 Mass. at 688-689; Commonwealth v. Bryant, 447 Mass. 494, 501 (2006); Commonwealth v. Leahy, 445 Mass. 481, 495 (2005); Commonwealth v. Stroyny, 435 Mass. 635, 639 (2002).  However, in so doing, we have not differentiated between opinions regarding the case and opinions about particular topics based on a prospective juror's life experiences or world view.  Even so, none of the above-cited cases has to do with the latter.

Where a prospective juror "has expressed or formed an opinion regarding the case, or has an interest, bias, or prejudice related to the unique situation presented by the case," the judge must satisfy him or herself that the prospective juror will set aside that opinion or bias and properly weigh the evidence and follow the instructions on the law.  Commonwealth v. Soares, 377 Mass. 461, 482, cert. denied, 444 U.S. 881 (1979).  Otherwise, removal of the prospective juror "is clearly appropriate in the interest that persons actually prejudiced not be seated on the jury even if it tends to skew an otherwise balanced panel."  Id.  Where, on the other hand, a prospective juror has expressed an opinion or world view

based upon his or her life experience or belief system, rather than asking him or her to set it aside (which is difficult if not impossible to do), a judge must determine whether, given that particular opinion, the juror nevertheless is able to be impartial in the case to be tried.[3]  See id. at 487 ("No human being is wholly free of the interests and preferences which are the product of his cultural, family, and community experience. Nowhere is the dynamic commingling of the ideas and biases of such individuals more essential than inside the jury room").

Thus, we emphasize that, in determining each prospective juror's ability to be impartial, although a judge may require a prospective juror to set aside an opinion regarding the case, the judge should not expect a prospective juror to set aside an opinion born of the prospective juror's life experiences or belief system.

2.  Analysis.  After the prospective juror responded affirmatively to the question put to the entire venire regarding

---

[3] Whether a juror's thoughts about a particular matter that have been formed through his or her life experiences are characterized as an opinion, point of view, belief system, or bias, as discussed infra, the dispositive question that must be asked is whether the juror can decide the case based on the evidence presented and the law as provided by the judge.  That said, we agree with the view expressed by the concurrence that there are some belief systems that may be incompatible with the ability to be a fair and impartial juror.  See post at     . Religious beliefs that prohibit one from sitting in judgment of another are an example.

whether there was anything about their views on the subject matter that would affect their ability to be fair and impartial in deciding the case, she was called to sidebar for an individual voir dire.  See Flebotte, 417 Mass. at 355.  At sidebar, the prospective juror stated her opinion that the "system is rigged against young African American males."  The judge asked questions in an attempt to determine whether the prospective juror could be impartial.  See Perez, 460 Mass. at 688-689.  See also G. L. c. 234A, § 67A.  The colloquy that followed warrants closer review.

The judge's first question to the prospective juror was proper:  "You think that belief might interfere with your ability to be fair and impartial?"  The prospective juror responded, "I don't think so."[4]  The judge went on to ask the juror:  "You . . . think you can put aside that opinion and bias --."  He did not get a chance to finish the question because the

---

[4] The prospective juror phrased this answer, as well as others, to reflect the form of the judge's questions, i.e., her answer sometimes began with, "I think," in response to a question phrased, "You think . . . ?"  We note that an answer that mirrors the syntax of a judge's question does not necessarily indicate an equivocal answer.  See Commonwealth v. Prunty, 462 Mass. 295, 311-312 (2012); Commonwealth v. Bryant, 447 Mass. 494, 501 (2006), citing Commonwealth v. Leahy, 445 Mass. 481, 495-496 & n.13 (2005) (affirming judge's determination of impartiality where juror responses included "I think.  I've never done this before so it's hard"; "I think I could"; and "I suppose so"); Commonwealth v. Ascolillo, 405 Mass. 456, 459-460 (1989).

prospective juror interrupted him, stating that she did not think that she could put "it" aside, and that "it" was "the lens that [she viewed] the world through."  Although she also affirmed that she could be unbiased and could listen to the evidence, it was within the judge's discretion to inquire further if he was not satisfied that her answer was unequivocal. See Commonwealth v. Clark, 446 Mass. 620, 629-630 (2006).

The judge did continue to question the prospective juror, telling her that she would "have to be able to put that out of [her] mind and look at only the evidence."  When the judge asked her, "Do you think you can do that?" the prospective juror responded, "I think so."  Finally the judge asked:  "You think . . . your experiences with . . . people in that type of a situation is going to have you look at it differently," implying that the prospective juror could not take her life experiences into account as a juror.  After the juror responded, "Probably," the judge excused her for cause.

Although the prospective juror indicated that, due to experiences she had, she believed that the "system is rigged against young African American males," and that this belief was not one that she could "put aside," she did not express any opinions having to do with the defendant or the case about to be

tried.[5]  Nevertheless, the record here indicates that the judge

required the prospective juror to "put aside" her firmly held

beliefs shaped by her life experiences in order to serve, and

excused her because her experiences would cause her to "look at

[the case] differently."

Every prospective juror comes with his or her own thoughts,

feelings, opinions, beliefs, and experiences that may, or may

not, affect how he or she "looks" at a case.  Indeed, this court

has acknowledged on multiple occasions that jurors do not

approach their duties with a tabula rasa.  See, e.g.,

Commonwealth v. Mutina, 366 Mass. 810, 817-818 (1975) ("Jurors

do not come to their temporary judicial service as sterile

intellectual mechanisms purged of all those subconscious factors

which have formed their characters and temperaments such as

racial or ethnic background, sex, economic status, intellectual

---

[5] At a certain point during the colloquy, after the
prospective juror told the judge that she could not put aside
"the lens that [she] view[ed] the world through," the judge
responded that she was "going to have to be able to put that out
of [her] mind and look at only the evidence."  The concurrence
suggests that it is not clear whether the judge "was directing
the juror to set aside any preconceived notions that may affect
her ability fairly to consider the evidence in this case or to
set aside the 'lens' through which she viewed the world."  Post
at    .  However, there is nothing in the record to indicate
that the judge was referring to the former.  In fact, except for
the judge informing the prospective juror that she would have to
be able to "look at only the evidence," and asking her, "Do you
think you can do that?" to which she replied, "I think so,"
there was no discussion about whether the prospective juror had
any opinions about the case at all.

capacity, family status, religious persuasion, political leanings, educational attainment, moral convictions, employment experience, military service or their individual appreciations of the social problems of the moment"); Ricard, 355 Mass. at 512 ("Every individual has impressions and beliefs, likes and dislikes").

It would neither be possible nor desirable to select a jury whose members did not bring their life experiences to the court room and to the jury deliberation room. See, e.g., J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 149 (1994) (O'Connor, J., concurring) ("Individuals are not expected to ignore as jurors what they know as men -- or women"). See also Mutina, 366 Mass. at 820 ("Juries are generally instructed by judges in their charges and urged by counsel in their argument that they must not leave their common sense outside the jury room"). Thus, a prospective juror may not be excused for cause merely because he or she believes that African-American males receive disparate treatment in the criminal justice system.[6] For that reason a

_____

[6] We note that there is ample empirical evidence to support such a conclusion. See generally E. Hinton, L. Henderson, & C. Reed, Vera Institute of Justice, An Unjust Burden: The Disparate Treatment of Black Americans in the Criminal Justice System, at 7-9 (May 2018), citing Starr & Rehavi, Mandatory Sentencing and Racial Disparity: Assessing the Role of Prosecutors and the Effects of Booker, 123 Yale L.J. 2, 28-30 (2013) (Federal prosecutors are more likely to charge African-Americans than similarly situated Caucasians with offenses that carry higher mandatory minimum sentences); C. Crawford, T.

trial judge must take care to determine whether such an opinion would affect a prospective juror's ability to be impartial.

The questioning here raises two concerns.  First, as discussed supra, a judge should not require a prospective juror to disregard his or her life experiences and resulting beliefs in order to serve.[7]  As we have acknowledged, bringing one's life

_____

Chiricos, & G. Kleck, Race, Racial Threat, and Sentencing of Habitual Offenders, 36 Criminology 481, 503 (1998) (similar disparity for State prosecutors with respect to decisions to charge under habitual offender statutes).  See also United States Sentencing Commission, Demographic Differences in Sentencing:  An Update to the 2012 Booker Report, at 6 (Nov. 2017) (African-American male defendants received sentences that were 19.1 per cent longer on average than similarly situated Caucasian male defendants).  These disparities also exist for victims of crime.  See C. Spohn & D. Holleran, Prosecuting Sexual Assault:  A Comparison of Charging Decisions in Sexual Assault Cases Involving Strangers, Acquaintances, and Intimate Partners, 18 Just. Q. 651, 680-681 (2001) (prosecutors in Kansas City and Philadelphia were less likely to file sexual assault charges when victim was African-American rather than Caucasian).

The problem of racial discrimination in the criminal justice system has not escaped the attention of this court. See, e.g., Commonwealth v. Buckley, 478 Mass. 861, 877 (2018) (Budd, J., concurring); Commonwealth v. Warren, 475 Mass. 530, 539-540 (2016).  See also Commonwealth v. Gonsalves, 429 Mass. 658, 670 (1999) (Ireland, J., concurring).

The Commonwealth, too, acknowledges in a letter it filed pursuant to Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982), that the "views and opinions expressed by [the prospective juror] are generally accepted, and shared within the community at large."

[7] Again, this is not to be confused with the firm requirement that all jurors set aside any preconceived opinions they may have formed regarding a case or a defendant prior to having heard the evidence.  See Commonwealth v. Soares, 377 Mass. 461, 482, cert. denied, 444 U.S. 881 (1979).

experiences to jury service is appropriate (and perhaps inevitable).  Mutina, 366 Mass. at 820.  Asking prospective jurors to "put aside" or "disregard" what they think, feel, or believe comes perilously close to improperly requiring them to "leave behind all that their human experience has taught them." Beck v. Alabama, 447 U.S. 625, 642 (1980) ("Jurors are not expected to come into the jury box and leave behind all that their human experience has taught them").

Second, a judge who proceeds in this fashion mistakenly equates an inability to disregard one's life experiences and resulting beliefs with an inability to be impartial.  A judge should not assume that a prospective juror is unable to be impartial merely because he or she expressed uncertainty about being able to put aside his or her firmly held beliefs. Instead, an otherwise qualified prospective juror should only be excused for cause if, given his or her experiences and resulting beliefs, the judge concludes that the prospective juror is unable to fairly evaluate the evidence presented and properly apply the law.  See Commonwealth v. Entwistle, 463 Mass. 205, 221-222 (2012), cert. denied, 568 U.S. 1129 (2013) ("defendant is not entitled to a jury that knows nothing about the crime, so long as jurors are able fairly to weigh the evidence in the case, set aside any information they learned outside the court

room, follow the judge's instructions, and render an impartial verdict").

Thus, when a prospective juror states an opinion or belief, whether it is specific to the case or not, the judge must satisfy himself or herself that the prospective juror will be able to fairly evaluate the evidence and apply the judge's instructions on the law.[8]  See Perez, 460 Mass. at 688-689; Commonwealth v. Auguste, 414 Mass. 51, 53-54, 57 (1992) (judge was required to investigate whether "juror would be impartial in his or her determination of the evidence" after juror expressed concern regarding convicting based on defendant's race).  See also Commonwealth v. McAlister, 365 Mass. 454, 459 & n.4 (1974), cert. denied, 419 U.S. 1115 (1975) (before excusing three jurors for cause, "judge took pains to assure that the attitudes expressed were more than just personal convictions and that they would interfere with the jurors' capacity to perform their duty").  Compare Vann Long, 419 Mass. at 804-805; Commonwealth

---

[8] There are countless variations of a proper voir dire in a situation such as this.  The exchange between the judge and a prospective juror during jury selection for the trial of Commonwealth v. Kennedy, 478 Mass. 804, 816-817 (2018) provides a good example; the concurrence also provides a helpful outline. See post at    .  No special terms or particular phrasing is required.  However, through the voir dire the trial court judge must determine whether a prospective juror who has expressed a deeply held opinion or belief relevant to the issues or parties in the case can nevertheless fairly evaluate the evidence and follow the instructions on the law.

v. Somers, 44 Mass. App. Ct. 920, 921-922 (1998) (juror improperly empaneled in case where defendant charged with firearm-related offenses and juror stated he has "strong opinions about gun control" and defendant "would not want me on a jury").

Judges are expected to, and indeed must, use their discretion and judgment to determine whether a prospective juror will be fair and impartial based on verbal and nonverbal cues as well as the totality of the circumstances. See Ruell, 459 Mass. at 136. Here, however, the judge made that determination based upon whether the prospective juror could do something that is arguably impossible to do -- put aside her life experiences and her resulting world view.[9] See Mutina, 366 Mass. at 820.

3. Prejudice. At oral argument the defendant conceded, and we agree, that he suffered no actual prejudice from the error, as the Commonwealth completed jury selection with a

---

[9] The question is not, as the concurrence implies, whether the voir dire was done in an artful way, see post at    , but instead whether it was done in a way that would allow the judge to determine the prospective juror's ability to fairly evaluate the evidence and follow the judge's instructions. Although the judge determined that the prospective juror could not be impartial because he found that "she hesitated quite a bit" and that "she really struggled with it," the record reflects that the question with which she "hesitated" and "struggled" was essentially whether she could put aside her world view, not whether she could, given her world view, fairly evaluate the evidence and follow the law.

peremptory challenge left available to use (and which could have been used on the prospective juror had she not been excused for cause). Moreover, the defendant has not argued that any member of the jury that ultimately convicted him was biased. We therefore address only the defendant's arguments that the error should result in an automatic reversal of his conviction.

The defendant claims that striking the prospective juror for cause resulted in structural error,[10] warranting automatic reversal for two different reasons: (1) it effectively resulted in an extra peremptory challenge for the Commonwealth; and (2) it infringed on the defendant's constitutional right to a jury comprised of a representative cross section of the community.[11]

Structural error is "[g]enerally . . . error that 'necessarily render[s] a criminal trial fundamentally unfair or

---

[10] The defendant uses the terms "presumed prejudice" and "prejudicial per se" rather than "structural error" throughout his briefs. We note that presumptions of prejudice can be rebutted and, here, the Commonwealth can demonstrate that the error was harmless beyond a reasonable doubt because of its unexercised peremptory challenge. See Commonwealth v. McNulty, 458 Mass. 305, 318 (2010) (applying harmless beyond reasonable doubt standard to nonstructural constitutional error). However, we do not consider the arguments for structural error waived because the defendant makes clear that he is analogizing to two well-established types of structural error -- denied peremptory challenges and Soares violations. See discussion, infra.

[11] The defendant raised the second argument during oral argument. We granted both parties leave to submit further briefing on this issue pursuant to Mass. R. A. P. 16 (l), as amended, 386 Mass. 1247 (1982).

an unreliable vehicle for determining guilt or innocence.'" Commonwealth v. Hampton, 457 Mass. 152, 163 (2010), quoting Washington v. Recuenco, 548 U.S. 212, 218-219 (2006). As such, structural errors defy harmless error analysis, and when claims of structural error that are timely raised and preserved on appeal are upheld, they require automatic reversal. Commonwealth v. Cohen (No. 1), 456 Mass. 94, 118-119 (2010) (no prejudice analysis necessary where defendant's right to public trial was violated). Structural errors "have been recognized in limited circumstances . . . [and] occur rarely." Hampton, supra, citing Recuenco, supra at 218 n.2. The defendant argues that the facts here are analogous to cases that have resulted in structural error. We conclude that the defendant's comparisons miss the mark.

a. "Extra" peremptory challenge for Commonwealth. The defendant contends that the dismissal of a prospective juror for cause at the Commonwealth's request had the practical effect of giving the Commonwealth an "extra" peremptory challenge, and claims that in such an instance prejudice should be presumed. He argues that an extra peremptory challenge erroneously awarded to the Commonwealth is equivalent to denying a valid peremptory challenge to the defendant. We have held that the latter results in the automatic reversal of a conviction. See Commonwealth v. Wood, 389 Mass. 552, 564 (1983). The defendant

reasons that a bonus peremptory challenge for the Commonwealth should similarly result in presumed prejudice. Although the argument is creative, we are not convinced.

Denying a defendant the right to exercise a valid peremptory challenge is prejudicial per se because "[t]he purpose of the properly exercised peremptory challenge is to aid the constitutional right to a fair and impartial jury." Id. at 560, citing Swain v. Alabama, 380 U.S. 202, 216-220 (1965). And we have held that "the right to be tried by an impartial jury is so basic to a fair trial that an infraction can never be treated as harmless error." Wood, supra at 564.

Here, the judge did not deny the defendant the opportunity to exercise a peremptory strike; instead, the judge dismissed a prospective juror whom the defendant had hoped would be on the jury. This scenario did not implicate the defendant's right to an impartial jury because where a potential juror is erroneously excused, the presumption is that that individual was replaced by another fair and impartial juror. See Northern Pac. R.R. v. Herbert, 116 U.S. 642, 646 (1886) (after judge excused juror favored by employer, "[a] competent and unbiased juror was selected and sworn, and the [employer] had . . . a trial by an impartial jury, which was all it could demand"). See also Taylor v. Louisiana, 419 U.S. 522, 538 (1975) (defendants are not entitled to jury of any particular composition). The

defendant is not entitled to automatic reversal based on an extra, unused peremptory strike provided to the Commonwealth.

b. <u>Fair cross section of community</u>. A defendant's right to a fair and impartial jury includes the right to a jury drawn from a venire representing a fair cross section of the community. See <u>Soares</u>, 377 Mass. at 478. The defendant acknowledges that "the right to a jury representative of a cross-section of the community cannot require that each jury include constituents of every group in the population." <u>Commonwealth</u> v. <u>Benjamin</u>, 430 Mass. 673, 677 (2000), quoting <u>Soares</u>, <u>supra</u> at 481. However, he claims that erroneously dismissing the prospective juror was reversible error because it deprived him of his constitutional right to a jury made up of a fair and representative cross section of the community by limiting the chance that citizens, including African-Americans, holding this viewpoint about the criminal justice system would be represented on the jury. We disagree.

The defendant asserts that his case may be compared favorably to <u>Soares</u>, <u>supra</u>. In <u>Soares</u>, this court held that the intentional use of peremptory challenges to exclude certain "discrete groups," including African-Americans,[12] from a jury is

---

[12] "[T]hose generic group affiliations which may not permissibly form the basis for juror exclusion . . . [are] sex, race, color, creed or national origin." <u>Soares</u>, 377 Mass. at 488-489.

an art. 12 violation of a defendant's right to a fair and impartial jury.[13]  Id. at 486, 488, 492.  As a result, this error, unaddressed at the time of trial, was held to be prejudicial per se.  Id. at 492.  See Commonwealth v. Jones, 477 Mass. 307, 325-326 (2017) (Soares violation is structural error).

The defendant argues that although the error in this case is different, he is harmed similarly in that it reduced the likelihood that his jury would be drawn from a representative cross section of the community.  The comparison is inapt.

In Soares, 377 Mass. at 488-490, the Commonwealth improperly used peremptory challenges to strike prospective jurors because they were members of a discrete group.  In contrast, here, the prospective juror was not struck due to being a member of a discrete group.  Instead, after conducting a voir dire, the judge excused the prospective juror because he found that she could not be a fair and impartial juror based on how she responded to his questions.  Although, as discussed supra, the judge made this finding without determining whether the prospective juror could fairly evaluate the evidence and

---

[13] The court reasoned that the right to a representative jury pool is "wholly susceptible to nullification" if the Commonwealth is permitted to exercise peremptory challenges to remove jurors on the basis of their membership in certain groups.  Soares, 377 Mass. at 486.

follow the instructions on the law, the judge made a good faith attempt to gauge whether she was qualified to serve. The judge did not conclude or otherwise suggest that the prospective juror's belief about the criminal justice system was disqualifying in and of itself.

It is the exclusion of prospective jurors "solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community" that violates a defendant's constitutional right to a fair and impartial jury, Soares, 377 Mass. at 486, not excusing prospective jurors for cause because the judge believes, after voir dire, that they cannot be impartial, see id. at 482. This is so even if, as here, the voir dire is not complete.

In arguing that prejudice should be presumed in these circumstances, the defendant points to Mason v. United States, 170 A.3d 182 (D.C. 2017), and King v. State, 414 A.2d 909 (Md. 1980). These extrajurisdictional cases are distinguishable. In King, supra at 910, prospective jurors were excused because they disagreed with marijuana laws in a marijuana possession case. In Mason, supra at 185, a potential juror was disqualified specifically because of her belief that the criminal justice system is biased against African-American men. In both cases the trial court judges treated the beliefs of the prospective jurors as "in themselves disqualifying." Id. at 187. See King,

supra at 910-913.  Here, by contrast, as discussed supra, the judge conducted a voir dire to determine whether the prospective juror could be impartial.

4.  Conclusion.  Although the voir dire of the prospective juror was incomplete, the defendant has not shown that the resulting dismissal of the prospective juror for cause resulted in prejudice.  We therefore decline to set aside the verdict.

Judgment affirmed.

GANTS, C.J. (concurring, with whom Gaziano, J., joins).  I agree with the court that a prospective juror may not be excused for cause from sitting on a jury simply because the juror believes that "the system is rigged against young African American males."  And I would like to believe that, if I were once again a trial court judge, I would have conducted the voir dire of this prospective juror a bit differently from how the judge in this case did after the juror raised her hand to the question, "Is there anything about the subject matter or your views about the subject matter that would affect your ability to be fair and impartial in deciding the case?"

I would like to believe that I would have acknowledged that I respect the juror's point of view, but noted that it was this particular defendant and not the criminal justice system that was on trial, and then asked whether the juror was confident that she could fairly and impartially decide in this case, based on the evidence she would hear at trial and the law I would explain to her, whether the Commonwealth had met its burden of proving beyond a reasonable doubt each element of the offense charged.  And I would like to believe that I would have evaluated her answer to that question, including her demeanor and any apparent equivocation, to determine whether she would be a fair and impartial juror.

But I know, based on my experience questioning thousands of prospective jurors during more than eleven years as a Superior Court judge, that a trial judge often needs to discuss with potential jurors whether their personal beliefs, opinions, and life experience would affect their ability to be fair and impartial, and that not every such discussion travels down the same road. And I know from that experience that there are times, with the benefit of additional thought and the wisdom of hindsight, in which a judge will recognize that a discussion with a juror could have been handled more artfully. We have no template for such questioning; nor would it make sense to attempt to create one because there are so many different ways that prospective jurors may share their concerns about the risk of possible bias. Addressing such concerns is necessarily improvisational, and therefore often imperfect.

It is with the benefit of this trial court experience that I examine whether the judge abused his discretion in excusing this prospective juror for cause, recognizing that we "afford a trial judge a large degree of discretion in the jury selection process." Commonwealth v. Vann Long, 419 Mass. 798, 803 (1995).

Every prospective juror brings his or her opinions, beliefs, and life experience to the court house when asked to perform juror service. We do not require jurors to leave them at the front door; nor could they. See Commonwealth v. Mutina,

366 Mass. 810, 817 (1975) ("Jurors do not come to their temporary judicial service as sterile intellectual mechanisms purged of all those subconscious factors which have formed their characters and temperaments . . ."). Indeed, we expect jurors to apply common sense derived from their life experience when evaluating the evidence presented at trial. See Commonwealth v. Caruso, 476 Mass. 275, 289 (2017) ("Jurors may rely on their own common sense and life experience in their role as fact finders"). And we aim for diverse juries precisely because we believe that the quality of fact finding will be enhanced by jurors' varied life experiences and points of view. See Commonwealth v. Soares, 377 Mass. 461, 487, cert. denied, 444 U.S. 881 (1979) ("No human being is wholly free of the interests and preferences which are the product of his cultural, family, and community experience. Nowhere is the dynamic commingling of the ideas and biases of such individuals more essential than inside the jury room"); id. at 478 ("fair jury is one that represents a cross section of community concepts" [citation omitted]). The goal in jury selection is not to select jurors without opinions or beliefs, but to select jurors whose opinions and beliefs do not affect their ability fairly and impartially to find the facts, to follow the law, and to render a just verdict. See Commonwealth v. Kennedy, 478 Mass. 804, 818 (2018) (judge "required to determine whether jurors . . . were capable

of setting aside their own opinions, weighing the evidence without considering extraneous issues, and following his legal instructions").

But there certainly are opinions, beliefs, and life experiences that might affect a juror's ability to fairly and impartially find the facts or apply the law, or a judge's confidence in the juror's ability to do so. If a juror were to characterize himself or herself as a white nationalist, we would expect a judge to inquire into whether those beliefs would affect the juror's ability to be fair and impartial, especially in a case with an African-American defendant. See G. L. c. 234A, § 67A ("if it appears that, as a result of the impact of considerations which may cause a decision to be made in whole or in part upon issues extraneous to the case, . . . the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may cause a decision to be made in whole or in part upon issues extraneous to the issues in the case"). And even if such a juror were to insist that he or she would be fair, we would not fault a judge -- who has the benefit of observing the juror's affect and demeanor -- for questioning the sincerity of the juror's claim and deciding to excuse the juror for cause. See Commonwealth v. Mattier (No. 2), 474 Mass. 261, 274-275 (2016)

(judge's determination regarding juror bias "is essentially one of credibility, and therefore largely one of demeanor" [citation omitted]); Commonwealth v. Ruell, 459 Mass. 126, 136, cert. denied, 565 U.S. 841 (2011) ("A judge has broad discretion in deciding whether a prospective juror is impartial . . .").

Nor need the opinion or belief be on the fringe to warrant such inquiry. Opinions about the proper balance between the needs of law enforcement and the protection of civil liberties in a criminal case, about defensive medicine in a medical malpractice case, or about the prevalence of racism in a discrimination case, for instance, could provide reason for further individual questioning. And while we do not expect people to transform into blank slates upon taking a seat in the jury box, dismissal for cause is appropriate where the judge, after evaluating a prospective juror's responses to voir dire questions, reasonably concludes that a belief or opinion will cloud that juror's ability fairly to evaluate the evidence and follow the court's instructions. See Commonwealth v. Colton, 477 Mass. 1, 17 (2017) ("As a general principle, it is an abuse of discretion to empanel a juror who will not state unequivocally that he or she will be impartial").

Here, the prospective juror indicated that she was concerned about her own potential bias by raising her hand when members of the venire were asked whether anything about the

subject matter of the case, or their views on the subject matter, would affect their ability to be fair and impartial. Under such circumstances, it was certainly appropriate for the judge to explore through individual voir dire whether this juror would, in fact, be fair and impartial. See G. L. c. 234A, § 67A.

I infer from the judge's questions that he wanted to be assured that the juror would decide the case based solely on the evidence, and that her fact finding would not be unfairly influenced by her opinion and life experience. The judge began his questioning by asking whether the prospective juror felt that she might have a bias in the case. When the juror answered in the affirmative and expressed her view that "the system is rigged against young African American males," the judge proceeded to ask whether her belief might interfere with her ability to be fair and impartial. "I don't think so," the juror responded. The judge followed up on this response, asking whether the juror thought she would be able to "put aside that opinion and bias." When the juror told the judge that she did not think she could "put it aside" and that her belief was "the lens that [she] view[ed] the world through," the judge informed the juror that she was "going to have to be able to put that out of [her] mind and look at only the evidence." It is not clear from this instruction whether the judge -- who properly

emphasized the importance of looking only at the evidence -- was directing the juror to set aside any preconceived notions that may affect her ability fairly to consider the evidence in this case or to set aside the "lens" through which she viewed the world. While asking a juror to set aside preexisting opinions regarding a particular case or set of circumstances is proper, see Kennedy, 478 Mass. at 818, I agree with the court that it would be improper to instruct a juror to set aside his or her life experiences or beliefs more broadly. Cf. Soares, 377 Mass. at 486 n.30 (where "tendencies do not stem from individual biases related to the peculiar facts or the particular party at trial, but from differing attitudes toward the administration of justice and the nature of criminal offenses," "differences in juror attitudes" enhance jury deliberations). I also agree that the judge's subsequent question, which asked whether the juror's experience working with low-income youth was "going to have [her] look at it differently" wrongly implied that the juror was required to set aside her world view.

Nevertheless, I infer from the judge's spare findings (and findings are routinely spare when a prospective juror is dismissed) that the judge excused this juror for cause not because of her opinions or world view, but because he was not assured of her ability to be impartial. A juror certainly may not be excused for cause solely because he or she believes that

the criminal justice system disfavors African-American defendants. See Mason v. United States, 170 A.3d 182, 187 (D.C. 2017) ("Standing alone, the belief that the criminal-justice system is systemically unfair to blacks is not a basis to disqualify a juror"). In fact, the belief voiced by this prospective juror is shared by many in our community, including most African-Americans.[1] Aggressively excusing jurors who hold this belief therefore risks excusing a disproportionate number of African-American jurors. Here, however, the judge appeared less concerned with the juror's beliefs about the inequities of the criminal justice system or her specific answers to his

---

[1] See Hyams Foundation and MassINC Polling Group, Racial Inequities, Policy Solutions: Perceptions of Boston's Communities of Color on Racism and Race Relations 19 (Mar. 2018) (in Boston, fifty-two percent of all people surveyed and forty-one percent of black people surveyed thought Boston police officers treat black and Latino people "somewhat or very fairly"; forty-five percent of all people surveyed and twenty-seven percent of black people surveyed thought Boston courts treat black and Latino people "somewhat or very fairly"); Voters Split on Whether Criminal Justice System Treats All People Fairly, NBC News, Nov. 8, 2016, https://www.nbcnews.com/card/nbc-news-exit-poll-voters-split-whether-criminal-justice-system-n680366 [https://perma.cc/PTF8-XGT8] (nationwide, eighty-two percent of black voters and forty-two percent of white voters believe criminal justice system treats black people unfairly). See generally Balko, Opinion, There's Overwhelming Evidence that the Criminal-Justice System Is Racist. Here's the Proof, Wash. Post, Sept. 18, 2018, https://www.washingtonpost.com/news/opinions/wp/2018/09/18/theres-overwhelming-evidence-that-the-criminal-justice-system-is-racist-heres-the-proof/?utm_term=.7fc6ef33714f [https://perma.cc/BU4Z-8E37] (compiling studies demonstrating racial bias in various aspects of criminal justice system).

questions than with the manner in which she responded.  The judge noted that the juror "hesitated quite a bit" and "really struggled with it."[2]  I infer from these findings that the judge understood the juror's hesitation and struggle to reflect her uncertainty whether she could decide the case based solely on the evidence.  And because the judge was not assured that she would be fair and impartial, he exercised his discretion to err on the side of caution and excuse the juror for cause.  Cf. Commonwealth v. Seguin, 421 Mass. 243, 246 (1995), cert. denied, 516 U.S. 1180 (1996) (judge properly "pursued the subject" where prospective juror hesitated before answering question regarding opinion on insanity defense).

---

[2] The court correctly asserts that a prospective juror's hesitation in answering a question, or his or her apparent struggle in answering it, means little if the question itself asks the juror to do the impossible.  See ante at note 9.  But the record does not clearly identify which question the judge was referring to when he said that the prospective juror "hesitated quite a bit" and "really struggled with it."  The court assumes, perhaps correctly, that the judge was referring to his question, "But you're going to have to be able to put that out of your mind and look at only the evidence.  Do you think you can do that?"  The court then assumes that the judge found that the prospective juror hesitated and struggled with "whether she could put aside her world view."  Id.  Given the compound nature of the judge's question, however, the judge reasonably could have understood the prospective juror to be hesitating and struggling with whether she could "look at only the evidence."  It is also possible that the judge, in describing the prospective juror's hesitation and struggle, was referring to her manner of response to an earlier question -- whether she thought her "belief might interfere with [her] ability to be fair and impartial."

I might have exercised my discretion differently and denied the prosecutor's motion to excuse this juror for cause, leaving it to the prosecutor to use a peremptory challenge if she wanted to remove the juror from the panel. And I might have credited the juror's assertion that she did not think her opinion of the criminal justice system might interfere with her ability to be fair and impartial, and that she believed she could decide the case based solely on the evidence. But I did not speak with this prospective juror -- the trial judge did. His evaluation of the juror's demeanor and her confidence in her ability to be fair is therefore entitled to great deference. See Commonwealth v. Stroyny, 435 Mass. 635, 639 (2002) ("Whether to accept the declaration of a juror that he or she is disinterested lies within the broad discretion of the trial judge"). See also Mattier (No. 2), 474 Mass. at 274-275. "An appellate court's review of a trial judge's decision for abuse of discretion must give great deference to the judge's exercise of discretion; it is plainly not an abuse of discretion simply because a reviewing court would have reached a different result." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

Because judges' quick and often difficult decisions concerning whether to excuse a juror for cause are entitled to substantial deference, I am reluctant to find that a judge abused his discretion where, as here, the judge made a good

faith decision to excuse the juror because of concerns about her ability to decide the case based solely on the facts and the law.  I do not believe that such a decision satisfies the test for an abuse of discretion articulated in L.L., 470 Mass. at 185 n.27:  that "a judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).

Therefore, as much as I appreciate the concerns raised by the defendant regarding the judge's manner of addressing the prospective juror's opinion on racial biases in our criminal justice system, I would decide the issue the court did not decide and conclude that the judge's decision to excuse the juror was not an abuse of discretion.  For these reasons, I concur.