NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1257

COMMONWEALTH

vs.

BRIAN VINES.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the Superior Court, the defendant

was convicted of several offenses stemming from an armed

robbery.[2]  He also was charged and subsequently convicted of

committing these crimes as a habitual offender under G. L.

c. 279, § 25.  While his appeal was pending, he filed a motion

to correct his sentences and a motion for a new trial.  We have

consolidated the defendant's direct appeal with his appeals from

_____

[1] Also known as Brian K. Davis.

[2] The defendant was convicted of assault, as a lesser included offense of armed assault with intent to murder, armed assault with intent to rob a person over the age of sixty, assault and battery on an elderly or disabled person causing serious bodily injury, armed robbery, and aggravated assault and battery by means of a dangerous weapon.  He was acquitted of armed home invasion.

the orders on these posttrial motions.[3]  We affirm the judgments

of conviction and the orders on the postconviction motions.

Background.  The victim was sixty-two years old and living

alone in the home where she had resided for about forty years

when the defendant knocked on her door under the pretext that he

wanted to contact her son, a childhood friend.  The victim

recognized the defendant and wrote down her son's telephone

number for him.  As the victim was getting the number, the

defendant gained entrance into the victim's house.  He then

robbed, beat, and stabbed her.  The assault was brutal.  The

victim suffered serious injuries including a foot-long

laceration to her back and a slit throat.  When the defendant

left the premises, with only the victim's automated teller

machine (ATM) card as she had little cash on hand, the victim

managed to crawl to her phone and call the police.  The victim

identified the defendant by name to the police and,

subsequently, to hospital personnel as well.[4]  The Commonwealth

also introduced evidence that the defendant used the victim's

---

[3] The defendant's notices of appeal also list other orders, including the order denying his second motion for a new trial, but the defendant makes no arguments about those orders and we do not further discuss them.

[4] The victim knew the defendant by the name Brian Davis. There is no dispute that Brian Davis and Brian Vines are the same person.  At trial, the defendant testified that his name is "Brian Davis Vines."

ATM card to withdraw money shortly after he left the victim's home and that forensic testing of samples of bloodstains taken from the defendant's clothing and sneakers revealed the presence of the victim's deoxyribonucleic acid (DNA).  The defendant testified at trial and admitted that he was at the victim's house but claimed that he was with another man.  The defendant testified that the victim gave him her ATM card to make a withdrawal and the other man was responsible for the attack on the victim.[5]

After the jury returned its verdict, the defendant was arraigned on the habitual offender counts of the indictments. The defendant waived his right to a jury trial and a bench trial ensued before the same judge who had presided over the jury trial.  The judge found the defendant guilty on all counts.  The judgments of conviction were consolidated for sentencing and, as relevant here, the judge imposed a life sentence on the conviction of armed robbery as enhanced by the conviction on the corresponding habitual offender count of the indictment.

About four years later, the defendant filed a motion to correct the life sentence referenced above.[6]  The trial judge

---

[5] We include additional relevant facts where necessary to provide context for our discussion of the issue.

[6] The defendant also sought to correct the ten-year sentence imposed on his conviction of assault and battery on an elderly person as enhanced under the habitual offender conviction.  The

allowed the motion and amended the life sentence to "no more than life but not less than 25 years."  Due to the retirement of the trial judge, the amended sentence was imposed by a different judge of the Superior Court (second judge).  The defendant then filed a motion for a new trial, which the second judge denied.

Discussion.  On direct appeal from the judgments of conviction, the defendant argues that (1) the trial judge abused his discretion by not excusing a juror for cause who, the defendant claims, revealed racial bias against Black men (the defendant is a Black man) and that trial counsel was ineffective for not using a peremptory challenge to excuse that juror; (2) the prosecutor twice mischaracterized the DNA evidence in her closing argument thereby creating a substantial risk of a miscarriage of justice; and (3) the amended sentence is illegal because the second judge did not exercise his discretion when he imposed it.  The defendant advances the same arguments in support of his new trial motion and further argues that the second judge erred in denying the motion without conducting an evidentiary hearing, as requested.  For the reasons that follow, we affirm the convictions, conclude that the sentence at issue is not illegal, and affirm the order denying the motion for a new trial.

judge amended that sentence with no objection from the Commonwealth.  That sentence is not challenged on appeal.

4

1. Failure to excuse juror no. 3 for cause. During the empanelment process the trial judge questioned all prospective jurors individually at sidebar concerning, among other things, potential bias due to the fact that the alleged victim is white and the defendant is Black. The defendant claims it was error for the judge not to sua sponte excuse juror no. 3 for cause because the juror did not state unequivocally that he could be impartial. We conclude otherwise.

In relevant part, juror no. 3 responded as follows to questions posed by the judge and defense counsel. First the judge asked, "Now, [the defendant] is [B]lack. The alleged victim . . . is Caucasian. Does the fact that he's [B]lack affect your ability to be fair and impartial at all?" Juror no. 3 responded, "No," and the judge then asked, "Do you think that because [the defendant is] [B]lack that he is more likely to have committed crimes than a Caucasian male?" To this question, juror no. 3 replied, "Maybe." The judge then said, "Maybe. All right, are you willing to decide or can you decide the case against [the defendant] based solely on the evidence and on the law as you hear it in this courtroom?" Juror no. 3 responded, "I believe so."

Thereafter, defense counsel followed up with the following inquiry, "When asked if though a [B]lack man is more likely to have committed the crime than a white man, you thought for a

5

minute and you said maybe.  If I could just ask why you said maybe?"  Juror no. 3 replied, "Because of everything going on in the country," to which defense counsel said, "Could I ask what you mean by that?"  Juror no. 3 explained,

> "There's been so much discussed about the percentages of crimes and race and comparisons that it has just made it so -- the argument has been so strong, okay, and the killing of police officers and all that kind of stuff has really kind of moved me in this whole circumstance."

> Defense counsel then stated, "I have no further questions."

The judge interjected as follows,

> "I understand your position on this.  We don't expect jurors to come in here with a blank slate.  Everybody has got their own opinions.  The crucial question though is whether or not you can put aside that conception and decide the case here, this specific case on whether or not the Commonwealth can prove beyond a reasonable doubt or will prove beyond a reasonable doubt that Mr. Vines is guilty of the charge based only on the evidence and on the law?"

Juror no. 3 said, "I think so."  The judge then declared juror no. 3 to be indifferent.  The prosecutor said she was "[c]ontent" and after consulting with the defendant, defense counsel said, "Content, Your Honor."  Juror no. 3 was then seated on the jury.

> "'We afford a trial judge a large degree of discretion in the jury selection process' because '[a] trial judge, who is aware of the facts of a particular case and can observe firsthand the demeanor of each prospective juror, is in the best position to determine what questions are necessary reasonably to ensure that a particular jury can weigh and view the evidence impartially'" (citations omitted).

6

Commonwealth v. Bannister, 94 Mass. App. Ct. 815, 826 (2019).

It is clear from our review of the record that the judge took special care to determine whether each prospective juror was impartial and juror no. 3 was no exception.[7]  Significantly, after defense counsel posed his questions, the judge pressed the juror further asking, as noted above, whether the juror could "put aside that conception and decide . . . this specific case . . . on whether the Commonwealth . . . will prove beyond a reasonable doubt that [the defendant] is guilty of the charge based solely on the evidence and on the law," to which the juror responded, "I think so."[8]  More was not required.  "It is well settled that a potential juror's use of seemingly equivocal

---

[7] The defendant points to the voir dire of juror no. 2, who was excused for cause, in support of his argument that juror no. 3 also should have been excused.  However, juror no. 3 ultimately expressed a belief that he could be fair and impartial while juror no. 2 did not.

[8] Citing Commonwealth v. Williams, 481 Mass. 443 (2019), the defendant argues that the judge abused his discretion in asking whether the juror could "put aside that conception," because, according to the defendant, it was "an opinion or world view based upon his or her life experience or belief system," which a juror cannot realistically be asked to set aside.  Id. at 448.  But in Williams, the juror stated that "the system is rigged against young African American males," that this was "the lens that I view the world through," and that "I don't think I can put it aside."  Id. at 444-445.  In those circumstances, a judge should ask "whether, given that particular opinion, the juror nevertheless is able to be impartial in the case to be tried" (emphasis added).  Id. at 449.  Here, in contrast, juror no. 3 did not express any such firmly held, pervasive opinion or world view as to make such a question necessary.

7

language is not determinative of the juror's ability to be impartial."  Id. at 827 (juror's response to potential bias against gangs, which included "I think I could," and "No, I don't think it would," did not warrant excusing the juror for cause).  See Commonwealth v Colton, 477 Mass. 1, 17 (2017) ("Yes, I think so" fairly viewed as unequivocal).[9]  In the circumstances presented, we discern no abuse of discretion.

The defendant next argues that trial counsel should have used a peremptory challenge to exclude juror no. 3 and that his failure to do so deprived the defendant of the effective assistance of counsel.  This claim was advanced in support of the defendant's motion for a new trial and was rejected by the second judge who conducted a careful review of the record and properly evaluated the claim under the familiar two prong test set forth in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  We reach the same conclusion and, consequently, we also conclude that the new trial motion was properly denied on this ground.

---

[9] Commonwealth v. Clark, 446 Mass. 620 (2006), on which the defendant relies is distinguishable.  In that case the Supreme Judicial Court held that the judge erred in refusing to excuse a juror for cause where that juror said that she believed African-Americans as a group were more likely to commit crimes because of their economic status.  See id. at 628-630.  The juror then said she could be impartial, but when pressed for an explanation, she said her impartiality would depend on the person's circumstances.  See id. at 630.

In order to prevail on a claim of ineffective assistance, the defendant must show "serious incompetency, inefficiency, or inattention of counsel -- behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer," and that counsel's poor performance "likely deprived the defendant of an otherwise available, substantial ground of defence." Saferian, 366 Mass. at 96, and cases cited. In addition, "[i]f the defendant argues that counsel's strategy or tactics were faulty, he must show that the challenged tactical judgments were 'manifestly unreasonable.'" Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 616 (2007), quoting Commonwealth v. Gonzalez, 443 Mass. 799, 809 (2005). In an effort to meet his burden, the defendant submitted an affidavit in which he claimed that trial counsel failed to inform him of the entirety of juror no. 3's responses to the questions posed during the voir dire. The defendant further averred that had his attorney informed him that juror no. 3 had replied "maybe" to the question whether a Black person was more likely to commit a crime that a white person he "would have instructed [his attorney] to exercise a peremptory challenge" on juror no. 3. Trial counsel submitted an affidavit contradicting the defendant's version of events. He averred that on review of the transcripts of the trial, he "recall[ed] that [he] paid close attention to juror no. 3's responses" and formed the opinion

9

that the juror would be a "conscientious and attentive juror." Specifically, counsel asserted that he advised the defendant that juror no. 3 had responded "maybe" but given his subsequent responses, counsel advised the defendant that they should keep the juror. The second judge credited trial counsel's affidavit, noting that it provided a "more accurate and truthful" recitation than that of the defendant. The second judge further concluded that counsel had made an informed strategic decision to keep juror no. 3 and to preserve the defendant's peremptory challenges for later use. That decision, according to the second judge, was not "manifestly unreasonable" when undertaken.

As noted, we agree with the second judge's reasoning and conclusion.[10] Based on our review of the record, we cannot say that counsel's conduct fell below the standard expected of an ordinary, fallible lawyer. And, even if we were persuaded that the defendant met his burden under the first prong of the test

---

[10] We further conclude that the second judge did not abuse his discretion in not holding an evidentiary hearing. The second judge was not the trial judge; however, as noted, he conducted a careful review of the entire record, and concluded that the conflicting accounts set forth in the affidavits of counsel and the defendant did not create a substantial issue requiring an evidentiary hearing. See Commonwealth v. Denis, 442 Mass. 617, 628-634 (2004) (decision by motion judge, who was not trial judge, that evidentiary hearing was not required was not abuse of discretion). Although we have conducted an independent review of the record, we agree with the motion judge's assessment that an evidentiary hearing was not necessary.

under Saferian, there is no basis on which we can say that the failure to exercise a peremptory challenge on juror no. 3 deprived the defendant of an otherwise available defense as the defendant has not shown that he was deprived of a fair and impartial jury.  See Commonwealth v. Berardi, 88 Mass. App. Ct. 466, 476 (2015), and cases cited.  Additionally, we note that the trial judge forcefully instructed the jury that they "may not be influenced by any bias . . . against . . . the defendant" and that "prejudice [had] no place in [their] deliberations." That the jury followed this instruction and returned a verdict based only on the evidence is supported by the fact they returned a not guilty verdict on the charge of armed home invasion.  See Commonwealth v. Gerhartsreiter, 82 Mass. App. Ct. 500, 508 n.5 (2012) ("We also note that the jury ultimately acquitted the defendant of two of the charges against him, indicating, to some extent, that they focused their attention on the evidence presented in the case and were not swayed by prejudice").

2. Prosecutor's closing argument.  During the course of the investigation, the police seized clothing and sneakers from the defendant.  The items contained bloodstains that were tested by a forensic scientist at the State police crime laboratory for the presence of the victim's DNA.  The forensic scientist, who testified as the Commonwealth's expert, explained that samples

11

of the bloodstains from the defendant's shirt, shorts, and sneakers contained DNA with an extremely high statistical probability that it belonged to the victim.[11]  The expert further explained that the statistical probability that the DNA belonged to someone other than the victim was one in 13.41 billion for "Caucasians" with regard to the sample from the defendant's shirt, one in 11.61 quadrillion for "Caucasians" with regard to the sample from the exterior of the defendant's shorts, one in 1.060 quadrillion for "Caucasians" with regard to the sample from inside the pocket of the defendant's shorts, and one in 72.62 trillion for "Caucasians" with regard to the sample from the defendant's sneakers.  In her closing, the prosecutor referred to the DNA evidence and said,

> "His clothing and his sneakers have her blood, her DNA. The shirt one in 13 billion chance it's somebody else's. The shorts one in 11.6 million.  Shorts inside pocket one in quadrillion -- one in one quadrillion.  The sneakers, one in 72 trillion.  That's the scientific testing that corroborates [the victim's] testimony, [the victim's] prior identifications[,] and all of the other evidence in this case."

There was no objection and therefore we review the defendant's claim to determine if there was error and, if so, whether it created a substantial risk of a miscarriage of justice.  See Commonwealth v. Souza, 492 Mass. 615, 635 (2023).

---

[11] In some instances the testing of the samples also revealed the presence of DNA from an unknown contributor from which no comparison could be made.

We discern no error.  The prosecutor correctly recited the statistical evidence as it was presented by the Commonwealth's expert albeit in slightly different words.  Furthermore, even if we were to assume, which we do not, that the prosecutor's comments were susceptible of being misleading, any error did not create a substantial risk of a miscarriage of justice where, as here, the jury was forcefully instructed on three occasions that closing arguments do not constitute evidence.  See id. at 636.

Next, also for the first time on appeal, the defendant challenges the prosecutor's comment regarding the bloodstain inside the pocket of the defendant's shorts.  With respect to a sample from this bloodstain the expert testified, "That would have to indicate that the DNA was transferred by either her or if someone came into contact with an item that was transferred into a pocket or from a certain individual."  In reference to this testimony, the prosecutor stated,

> "Recall the testimony of . . . [the forensic scientist], about the significance of the blood inside his pocket. That is compelling, ladies and gentlemen.  Her blood, her DNA, inside this man's pocket.  It didn't get there from someone else on the outside.  Did he put a bloody weapon in there?  Did he put a bloody hand in there?  Inside the pocket compelling DNA scientific evidence of his guilt."

We discern no error as the prosecutor did not misstate the evidence.  Rather, she asked the jury a series of rhetorical

questions that had a basis in fact.[12]  Additionally, as noted above, any potential for error was sufficiently mitigated by the judge's instructions to the jury.

3.  Motion to correct sentence under G. L. c. 279, § 25.
The trial judge recognized that he had improperly sentenced the defendant to a life sentence as provided by G. L. c. 279, § 25 (b), and that he instead should have sentenced the defendant under § 25 (a), which in conjunction with § 24, requires that "[i]n the case of a sentence to life imprisonment, . . . the court shall fix a minimum term which shall be not less than 15 years nor more than 25 years."  G. L. c. 279, § 24.  The judge's order then stated that the defendant "shall be sentenced . . . to no more than life but not less than 25 years to MCI-Cedar Junction."  The order is dated December 16, 2020, and was entered on the docket on January 4, 2021.  A corrected mittimus reflecting the amended sentence was issued on June 2, 2021.

Although the trial judge issued an order imposing a new sentence and a corrected mittimus was issued, the case was

---

[12] The defendant also claims that trial counsel was ineffective for failing to object to these comments.  Given our conclusion, it is evident that the defendant would not have fared any better had trial counsel objected.  As the Commonwealth notes in its brief, "if an omission of counsel does not present a substantial risk of a miscarriage of justice . . . , there is no basis for an ineffective assistance of counsel claim under either the Federal or State Constitutions." Commonwealth v. Curtis, 417 Mass. 619, 624 n.4 (1994).

14

scheduled for a sentencing hearing which took place on May 21, 2021. As previously noted, the trial judge had retired by this time and the second judge presided over the hearing. At the beginning of the hearing, the second judge acknowledged the trial judge's order "indicated what this defendant's sentence would be, as revised," and informed the parties that he believed he had no "leeway" to do anything but impose the new sentence the trial judge had ordered. The second judge went on to explain, "[The trial judge's] decision specifically says that . . . on Counts 7 and 8, he says that defendant shall be sentenced . . . to no more than life, but not less than 25 years . . . . It's not as though he left the issue unresolved. He made an order." At the conclusion of the hearing, the second judge further stated,

> "I have spent some time reviewing the file, and I've read [the trial judge's] decision and I would agree with it, and I would adopt it. . . . So to the extent that I have any discretion, I agree with [the trial judge] in these circumstances, so I would impose the same sentence."

The defendant contends that the second judge had discretion to impose a different sentence and because he failed to exercise that discretion the sentence he is serving is illegal despite the correction made by the trial judge. To begin with, the sentence, as amended by the trial judge, was not illegal if for no other reason than it does not exceed the statutory maximum. See Commonwealth v. Walters, 479 Mass. 277, 280-281 (2018). In

15

addition, there is no basis on which to conclude that the trial judge misunderstood the bounds of his authority.  See Commonwealth v. McGuiness, 421 Mass. 472, 475 (1995).  On the contrary, the trial judge fully understood that his initial sentence was improper and he corrected it.  Given these circumstances, we, like the second judge, question whether a resentencing hearing was required.  Be that as it may, one was held, and we discern no error on the part of the second judge. Even if the second judge had discretion to impose a new sentence, an issue which we need not address, the second judge made clear that he had reviewed the record including the sentencing memorandum filed by counsel and would have imposed the same sentence as the trial judge.[13]  Accordingly, we conclude

---

[13] No additional hearing was required before the corrected sentence was imposed.  See Mass. R. Crim. P. 28 (b), 378 Mass. 842 (1979).  Defense counsel presented argument at the original sentencing hearing on September 29, 2016, regarding how the trial judge should exercise his discretion with respect to § 25 (a).  Although the judge originally concluded that he had no such discretion, once he concluded otherwise in his December 16, 2020, order, he was not required to afford the defendant another hearing before exercising it.

that the defendant's right to due process was not violated and the sentence at issue is not illegal.

Judgments affirmed.

Order dated December 16, 2020, on motion to correct sentences and amended sentences imposed on May 21, 2021, affirmed.

Order dated December 15, 2021, denying motion for new trial affirmed.

By the Court (Vuono, Neyman & Sacks, JJ.[14]),

Clerk

Entered:  May 12, 2026.

---

[14] The panelists are listed in order of seniority.